976 F.2d 724
 NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
Raul RODRIGUEZ, Plaintiff, Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant, Appellee.
 No. 92-1250.
 United States Court of Appeals,
First Circuit.
 September 21, 1992
 
 Appeal from the United States District Court for the District of Puerto Rico
 Salvador Medina De La Cruz on brief for appellant.
 Daniel F. Lopez Romo, United States Attorney, Jose Vazquez Garcia, Assistant United States Attorney, and Thomas D. Ramsey, Assistant Regional Counsel, Region I, Department of Health and Human Services.
 D. Puerto Rico
 AFFIRMED.
 Before Breyer, Chief Judge, Campbell, Senior Circuit Judge, and Cyr, Circuit Judge.
 Per Curiam.
 
 
 1
 Plaintiff appeals from a district court decision affirming a final decision of the Secretary of Health and Human Services that appellant was not disabled under the Social Security Act, 42 U.S.C. §§ 416(i), 423(d), for purposes of obtaining disability insurance benefits. Appellant applied for disability insurance benefits for a back condition dating from 1981 which allegedly rendered him unable to work. The administrative law judge (ALJ) denied benefits, concluding that, while appellant's impairment was severe enough to prevent him from continuing to work as a truck driver, he had the residual functional capacity to engage in light work. Because the record as a whole supports this finding, we affirm. Appellant raises a number of objections to the ALJ's decision, which we consider in turn.[1]
 
 
 2
 Appellant first claims that the ALJ's decision is inconsistent with testimony by a vocational expert that appellant could not engage in any substantial gainful work. Appellant argues that the medical evidence shows that his back pain is at least frequent and that the vocational expert testified that frequent pain would prevent appellant from performing any substantial gainful work. Actually, the vocational expert testified that appellant would be unable to perform any work in the national economy if the pain were both frequent and severe. The ALJ basically found that appellant's pain was not severe when he concluded that appellant's back condition, though painful, was not a "disabling painful condition" and that appellant's allegation of pain was credible only to the extent that he could no longer perform heavy or medium work. Therefore, the condition of the hypothetical posed to the vocational expert that the pain be severe was not met, and appellant's objection is not well taken. See Lizotte v. Secretary of Health and Human Services, 654 F.2d 127, 131 (1st Cir. 1981) (affirming the ALJ's determination that the claimant could perform certain tasks where, although the vocational expert had determined that the claimant could not perform such tasks if certain restrictions in his capabilities were assumed, the ALJ had found that the assumed restrictions did not actually exist).
 
 
 3
 Next, appellant states that specific clinical tests showed that he had very limited residual functional capacity to stand, walk or sit. The clinical tests to which appellant refers measured the difficulty or pain appellant encountered when flexing certain joints. Appellant's medical records indicate that at times appellant scored positive on those tests (at other times, the tests were negative). Nowhere do appellant's treating doctors indicate that a positive result would mean that appellant's residual functional capacity was limited, nor do they appear to have recommended that appellant limit his activities in any way. Although appellant points out that the Secretary's examining physician, Dr. Garayalde, observed that appellant had difficulty dressing and undressing himself, that observation is not controlling since it described appellant's condition as of the year after appellant's eligibility for benefits had expired. The only evidence in lay terms of appellant's functional capacity for the relevant period was provided by a residual functional capacity assessment form filled out by Dr. Hernandez, a medical consultant to the Secretary. Based on his review of medical records,[2] Dr. Hernandez concluded that appellant's strength was somewhat limited: he could lift or carry up to 20 pounds and could frequently lift or carry 10 pounds; he could stand, walk or sit about six hours in an eight-hour day; and he could push or pull light weights. Dr. Hernandez also found that, although appellant could stoop only occasionally, he could climb, balance, kneel, crouch, crawl, reach, handle, and engage in other fine motor activities with frequency. Here, where appellant's treating physicians provided no residual functional capacity assessment, the ALJ was entitled to rely on Dr. Hernandez's uncontradicted assessment in determining that appellant had the residual functional capacity to perform light work.[3] Rodriguez Pagan v. Secretary of Health and Human Services, 819 F.2d 1, 2-3 (1st Cir. 1987), cert. denied, 484 U.S. 1012 (1988); cf. Berrios Lopez v. Secretary of Health and Human Services, 951 F.2d 427, 430-32 (1st Cir. 1991) (discussing the circumstances under which an ALJ may credit a non-examining, non-testifying medical consultant's residual functional capacity assessment over a treating physician's assessment); Arroyo v. Secretary of Health and Human Services, 932 F.2d 82, 87-88 (1st Cir. 1991) (the ALJ supportably relied on the residual functional capacity assessment of non-examining consultants though treating physicians had expressed contrary opinions). Indeed, we would not have permitted the ALJ to make a residual functional capacity determination on the basis of raw test data under the circumstances present here. See Rosado v. Secretary of Health and Human Services, 807 F.2d 292, 293-94 (1st Cir. 1986) (the ALJ could not draw his own conclusions about a claimant's functional capacity from raw medical data not analyzed by a physician in functional terms where a contrary medical report by an examining physician described the claimant's functional capacity in relevant, nonconclusory detail); Berrios v. Secretary of Health and Human Services, 796 F.2d 574, 576 (1st Cir. 1986) (the Appeals Council could not base its denial of benefits on its interpretation of raw, technical data contained in one medical report where a contrary report interpreted medical data in functional terms).
 
 
 4
 For the same reason, appellant's objections that he could not perform light work requiring standing for six hours a day and that the ALJ needed a medical advisor to help him interpret appellant's medical record are without merit. Dr. Hernandez acted essentially as medical advisor, analyzing the raw medical data to determine appellant's residual functional capacity. No other physician analyzed appellant's functional capacity. Thus, Dr. Hernandez's assessment that appellant could perform light work was uncontradicted by any other professional testimony. Furthermore, the ALJ determined that appellant's testimony that he could not engage in even light work was not fully credible. Appellant's medical records showed that appellant sometimes went for many months without seeking medical treatment for his condition and that conservative intervention (medication and physical therapy) improved his condition when it became painful. In light of this evidence, the ALJ's decision not to fully credit appellant's testimony as to the intensity of his pain and its effect on his physical capacity was reasonable and is entitled to our deference. See Irlanda Ortiz v. Secretary of Health and Human Services, 955 F.2d 765, 769 (1st Cir. 1991) (although appellant had an objective medical impairment that could reasonably be expected to produce pain, the ALJ supportably decided that the claimant's complaints were not credible to the extent alleged since medical records indicated, among other things, that at times claimant's condition improved and that in some years claimant received no treatment at all for his back condition). Appellant also claims that the ALJ should not have "mentioned" or "used in argument" the fact that appellant was reluctant to undergo surgery or further physical therapy. Appellant points out that Social Security Ruling 82-59 permits a determination that a claimant has not followed prescribed treatment that could remove the alleged disability only after the claimant is notified that refusing treatment could result in the loss of disability benefits and is given an opportunity to undergo treatment.[4] Appellant argues that he was not so informed or given an opportunity for treatment. Although the ALJ did mention the appellant's reluctance to undergo surgery or to continue physical therapy when describing appellant's medical history, he did not "find" that appellant had failed to follow prescribed treatment, nor did he base his finding that appellant was not disabled on that fact. Rather, he determined that appellant was not disabled because his residual functional capacity permitted him to engage in light work. Thus, one of the conditions for applying the Ruling that the claimant's impairment precludes any substantial gainful activity-did not exist here. For that reason, Ruling 82-59 does not apply, and appellant's objection is not on target.[5]
 
 
 5
 Appellant further complains that the ALJ "discarded" without explanation the testimony he was required to obtain under Avery v. Secretary of Health and Human Services, 797 F.2d 19 (1st Cir. 1986). We conclude that the ALJ adequately considered the Avery factors. First, he thoroughly assessed appellant's medical history and subjective complaints of pain, and in so doing described "the nature, location, onset, duration, frequency, radiation and intensity" of appellant's pain. The medical record persuaded him that appellant had a severe impairment with attendant pain. But he found that the impairment was not as severe or continuous as the disability described in Appendix 1 of 20 C.F.R. Part 404, Subpart P, and that appellant's pain was not as intense as he alleged. Second, the ALJ determined that heavy and medium lifting and carrying were activities that would be "precipitating and aggravating factors" under Avery. He noted, for example, that the lifting of cement bags in April 1987 had exacerbated appellant's back condition. Accordingly, he found that appellant should engage only in light lifting and carrying. Third, although the ALJ did not describe appellant's medication for his back pain by name or dosage, he elicited testimony about appellant's medication and reviewed appellant's medical records, concluding that appellant had been treated "conservatively" with muscle relaxants and anti-inflammatories with "good results ... and no side effects." Fourth, the ALJ noted that appellant had also undergone other treatment, i.e., physical therapy, with "good results ... and no side effects." Fifth, he analyzed appellant's functional capacity, crediting appellant's allegations of pain and physical limitation only to the extent that they showed that appellant could not perform heavy or medium work. Crediting Dr. Hernandez's report over appellant's subjective complaints, he determined that appellant would be able to engage in light work. Last, the ALJ considered evidence of appellant's daily activities, which had been offered to show appellant's limited physical capacity. He rejected that evidence because it described appellant's condition as of a time when appellant's eligibility for disability benefits had already expired. Thus, the ALJ considered each of the Avery factors, and we see no error in his decision on that score.
 
 
 6
 Finally, appellant complains that the ALJ emphasized the absence of motor or neurological deficits in his decision, and claims that there is no requirement that a claimant establish a neurological motor deficit in order to verify alleged back pain. Appellant's contention is without merit. As part of the five-step procedure used in determining an applicant's qualification for disability benefits, the ALJ was required to determine whether or not the appellant's condition equalled the severity criteria listed in the relevant regulations. He concluded that appellant did not have the "consistent clinical neurological deficits as required by Section 1. 05(c) of the Listing. He was not found with neurological sensory, reflex and motor abnormalities...." Because this language reflects the language used in the regulations, it was entirely appropriate. See 20 C.F.R. Part 404, Subpart P, Appendix 1, § 1. 00B ("There must be a detailed description of the orthopedic and neurologic examination findings. The findings should include a description of ... motor and sensory abnormalities, muscle spasm, and deep tendon reflexes."); § 1.05C ("1. Pain, muscle spasm, and significant limitation of motion in the spine; and 2. Appropriate radicular distribution of significant motor loss with muscle weakness and sensory and reflex loss.").
 
 
 7
 Accordingly, we affirm the judgment of the district court.
 
 
 
 [1]
 The ALJ also determined that appellant's mild dysthymic mood disorder did not render appellant disabled. Because appellant does not contest that finding, we confine our discussion to issues relating to appellant's back condition
 
 
 [2]
 Dr. Hernandez's assessment, made in January 1988, does not state specifically that he reviewed appellant's entire medical record. The assessment form indicated, however, that his assessment reflected appellant's condition as of December 1986, which would have required his review of appellant's medical records as of that time. Dr. Hernandez's statement of the medical findings on which he based his assessment mirrors primarily language found in Dr. Garayalde's 1987 report, but also reflects language only found in appellant's other medical records. (He uses the term "PVM spasm", which does not appear in Dr. Garayalde's report; one of appellant's earlier medical records uses the term "paravertebral spasm.") Moreover, the Secretary's brief on appeal states that Dr. Hernandez reviewed appellant's "medical record" in making his assessment, and the Secretary's initial denial of benefits, which relied on Dr. Hernandez's residual functional capacity assessment, indicated that both appellant's medical records for 1982-87 and Dr. Garayalde's report were considered in reaching that determination. We conclude that there is ample evidence here to believe that Dr. Hernandez reviewed appellant's entire medical record in making his residualfunctional capacity assessment. We note, however, that we would not assign much evidentiary weight to an assessment that did not take into account a claimant's entire relevant medical record, especially where, as here, the Secretary's own medical assessments were based on examinations or evaluations conducted fairly long after the relevant disability period
 
 
 [3]
 Dr. Hernandez's residual functional capacity assessment also has evidentiary value because he appears to have reviewed appellant's medical status carefully before making his assessment. Correspondence in the record indicates that Dr. Hernandez asked Dr. Garayalde to provide an evaluation of appellant's muscle weakness, information which was not in Dr. Garayalde's initial report and which Dr. Hernandez stated was necessary before he could assess appellant's residual functional capacity
 
 
 [4]
 The policy statement prefacing the Ruling indicates that the determination that a claimant has not followed prescribed treatment essentially constitutes a determination that the claimant is not disabled for purposes of receiving benefits under the Social Security Act. See SSR 82-59, reprinted in [Rulings 1975-82] Soc. Sec. Rep. Serv., at 793 ("An individual who would otherwise be found to be under a disability, but who fails without justifiable cause to follow treatment prescribed by a treating source which ... can be expected to restore the individual's ability to work, cannot be found to be under a disability.")
 
 
 [5]
 We note, however, that we see no reason why an ALJ should not consider a claimant's refusal to undergo treatment when determining issues other than that of the actual existence of the alleged disability, e.g., when making credibility determinations. A claimant's refusal to continue therapy that is shown to have alleviated pain would certainly be relevant in judging the severity of the pain alleged by the claimant. Cf. Irlanda Ortiz v. Secretary of Health and Human Services, 955 F.2d 765, 769 (1st Cir. 1991) (the Secretary could infer from appellant's failure to seek any medical treatment at all that appellant's pain had not been as intense as alleged)