**Jose E. ARROYO, Plaintiff, Appellant,**

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant, Appellee.**

**No. 90–2058.**

United States Court of Appeals, First Circuit.

Submitted Jan. 28, 1991.

Decided May 8, 1991.

Francisco J. Hernandez Rentas Bayamon, P.R., and Sigfredo Portalatin Tosado, Arecibo, P.R., on brief, for plaintiff, appellant.

Daniel F. Lopez Romo, U.S. Atty., Jose Vazquez Garcia, Asst. U.S. Atty., and Robert M. Peckrill, Asst. Regional Counsel, Dept. of Health & Human Services, on brief, for defendant, appellee.

Before TORRUELLA, SELYA and CYR, Circuit Judges.

PER CURIAM.

Claimant Jose Arroyo appeals from a district court judgment denying his claim for disability benefits. Claimant applied for benefits on May 15, 1987. He alleged that he had been unable to work since the previous February due to hypertension, diabetes, and a nervous condition later identified as chronic alcoholism. His application was denied on initial review and reconsideration. After a hearing before an administrative law judge (ALJ) at which the claimant, his wife, treating psychiatrist, and a vocational expert testified, the ALJ denied claimant's application on the ground that claimant retained the capacity to perform light, unskilled work. The Appeals Council denied claimant's request for review, rendering the ALJ's decision the final decision of the Secretary. The Puerto Rico district court affirmed the Secretary's decision upon review of claimant's action under 42 U.S.C. § 405(g). This appeal followed.

On appeal, the claimant argues that the Secretary's decision is not supported by substantial evidence on the record as a whole and is infected with various errors of law. We affirm.

## I.

At the time of the hearing before the ALJ, the claimant was of younger age (43) and had not worked for over one year. He had completed high school and one year of business school. Between 1974 and 1987, claimant worked as a clerk for the Treasury department and as a bank teller, a position which he held for eleven years (1976–87).[1] Although the record is not entirely clear on this point, it appears that claimant was either suspended, fired, or asked to leave his job as bank teller due to problems with alcohol. This happened in March 1987, after claimant was hospitalized for alcoholic hepatitis. Thereafter, claimant filed an application for social security disability benefits.[2]

The medical evidence disclosed that claimant was treated periodically between 1982 and 1987 by the Castaner Medical Group and other health care providers. In 1984, while being treated for a lower back cyst, claimant was assessed as having uncontrolled diabetes and described as an "ETOH abuser." An oblique reference suggests that claimant underwent a liver biopsy which revealed fatty tissue.

At his wife's request, claimant began psychiatric treatment with Dr. Elias Jimenez Olivo, a psychiatrist, in August 1985. Dr. Jimenez reported that claimant's history included the continuous use of alcohol for the past 10 years. He described claimant as "cooperative [and] anxious;" however, claimant did not acknowledge that he was an alcoholic. Dr. Jimenez saw claimant on three occasions between August and November 1985. Dr. Jimenez prescribed medications for claimant as he was not able to continue sessions due to money problems. He did not see claimant again until 1987.

In November 1985 claimant again presented to the Castaner Medical Group with severe anxiety and "flapping tremors." He was diagnosed to be suffering from diabetes and chronic alcohol use. Antianxiety medications (dalmane and xanax) were continued and vistaril, another sedative, was prescribed.

In March 1986 claimant presented at the Commonwealth's Department of Health, Mental Health Program. He claimed that his nerves were out of control and that he suffered from tremors. Mental status examination found claimant presenting an unshaven appearance, with a cooperative attitude, coherent thought and normal intellect. He was diagnosed to be suffering from depression and placed on etrafon, a tranquilizer and antidepressant. Claimant returned to this facility on April 22, 1986. He reported that he did not take the etrafon but was taking dalmane and xanax. He was diagnosed with anxiety, depression and alcoholism. Dalmane and xanax continued to be the prescribed treatment. Claimant did not return for a June 11, 1986 appointment.

In 1987, claimant returned to the Castaner Medical Group and presented with increased alcohol use, tender liver and malaise. He was diagnosed to be suffering from alcoholic hepatitis. He refused hospitalization. Valium was prescribed. Claimant was hospitalized for alcoholic hepatitis in January–February 1987 at the Hospital El Buen Pastor. A liver scan disclosed early cirrhotic changes. At that time claimant's treating internist, Dr. Diez Sifontes, diagnosed claimant as suffering

---

1. Before 1976, claimant spent fourteen years working in various positions (general helper, apparel stock checker and clerk) for a factory in the garment industry.

2. Claimant's initial filings identified "nervous problems," diabetes and high blood pressure as impairments responsible for his alleged disability. The Social Security Administration's claims interviewer wrote, "[t]his person was a bank teller in this town and [is] well known to us. He was always very nervous and trembly. One can tell he is a very heavy drinker.... [he presents] a beaten world weary look of someone who drinks a lot." Claimant's request for reconsideration, which was filled out by his wife, stated that claimant is an alcoholic and won't accept help.

from chronic alcoholism, early cirrhosis, and diabetes. Claimant lost his job shortly after he was released from the hospital. He continued to be followed by Dr. Diez, who prescribed additional tranquilizers (mellaril and restoril). Dr. Diez reported that claimant continued to drink, and that he had once visited Alcoholics Anonymous but had refused to return.

Dr. Jimenez testified that he saw claimant again three weeks after claimant was fired. He also examined claimant in June 1987. Mental examination found claimant anxious and depressed. He did not present perceptual disturbances nor delirious ideas, and was fully oriented in person and place, while only partially oriented in time. Recent, immediate and remote memory were deteriorated and estimated to have been so for more than one year. Judgment was regular, insight poor, attention and concentration were diminished. Dr. Jimenez diagnosed claimant's condition as alcohol dependency accompanied by anxiety and depression.

Claimant was also seen by Dr. Mojica Sandoz at the State Insurance Fund (SIF) in March and April 1987. Dr. Mojica Sandoz reported that claimant had been hospitalized for uncontrolled diabetes and marked anxiety. Mental examination found claimant anxious and tense, but accessible, cooperative and nonevasive. Thought progress was normal. Claimant was logical, coherent, and relevant, with no displays of blocking, perseverance or disorganization of associations. Thought content was not severely disturbed, memory and orientation were adequate, intellectual functioning was normal average. Dr. Mojica Sandoz diagnosed claimant to be suffering from a depressive disorder with marked anxiety. He made no reference to claimant's use of alcohol.[3]

The Secretary obtained several consulting evaluations of claimant's condition from physicians who examined claimant's records and from physicians who examined claimant personally. Dr. A.M. Marxuach, a nonexamining internist, diagnosed claimant to be suffering from chronic liver disease that did not meet or equal the Secretary's listings. His assessment of claimant's residual functional capacity was fully consistent with an ability to perform the exertional requirements of light work. *See* 20 C.F.R. § 404.1567(b).[4]

The Secretary obtained psychiatric reviews from two nonexamining psychiatrists, Dr. Patricia Vilar and Dr. Maria Quinones. Each completed mental residual functional capacity (RFC) assessments and Psychiatric Review Technique Forms (PRTFs). Their findings are generally consistent in reporting claimant to be not significantly limited in his ability to understand, remember, and carry out short, simple instructions. They also found no significant limitations in claimant's ability to ask simple questions and make simple decisions. Moderate limitations were noted in claimant's ability to interact with the general public, to perform within a schedule, maintain regular attendance, and to complete a normal work day and week. Both consultants found claimant to be suffering from a substance addiction disorder (§ 12.-09), with manifestations most like those noted under the affective disorder listing (§ 12.04). Dr. Quinones' PRTF noted that claimant had slight limitations in his activities of daily living and ability to maintain social functioning. She recorded that claimant experienced deficiencies of concentration, persistence, or pace that often resulted in a failure to complete tasks in a timely manner. She checked that there was insufficient evidence to assess whether claimant would experience episodes of deterioration or decompensation in work or work-like settings.[5]

---

3. Records from the State Insurance Fund report that claimant at times worked under the influence of alcohol.

4. Doctor Marxuach found claimant able to lift and carry up to 20 pounds, (10 pounds frequently), to sit, stand and walk up to six hours, and to push and pull up to 20 pounds.

5. Dr. Vilar's PRTF gave claimant the following ratings in the aforementioned functional categories: moderate, moderate, often and insufficient evidence.

The Secretary also had claimant examined by Dr. Melvin Acosta Ruiz, an internist, and Dr. Rafael Rafols Saavedra, a psychiatrist. Dr. Acosta Ruiz diagnosed claimant to be suffering from chronic alcoholism, noninsulin dependent diabetes, and mild arterial hypertension. He examined claimant in June 1987, and noted that at that time claimant needed "an urgent psychiatric evaluation and to be placed on a rehabilitation treatment otherwise he will not be able to engage in productive activities." At that time claimant's medications included diabinese, desyrel (an antidepressant), vistaril and tranxene (a tranquilizer).

Psychiatrist Rafael Rafols Saavedra examined claimant in August 1987. Mental status examination found claimant without tics or movements, of sad demeanor, with logical and relevant thought content and good associations. There were no hallucinations nor suicidal or homicidal ideas. Claimant appeared attentive, without difficulty concentrating. Immediate memory was poor. Recent and remote memory were conserved. Claimant was oriented in all spheres. Judgment was adequate. Dr. Rafols Saavedra reported that claimant had been consuming about a fifth of rum daily since 1985. Claimant's daily activities included caring for his personal needs, watching television, and reading the newspaper. From 11 a.m. to 3 p.m., according to his wife, claimant drank at neighborhood bars. He helped with the household chores between 3–5 p.m., then again went out drinking. Dr. Rafols Saavedra diagnosed claimant to be suffering from alcohol dependency, diabetes mellitus, arterial hypertension and hepatitis. He found claimant able to handle his own funds.[6]

Both claimant and his wife testified that claimant drank daily. Claimant's wife testified that claimant was irritable, indecisive, and aggressive and that his drinking had destroyed their home.

Both claimant's treating physicians, Dr. Jimenez and Dr. Diez, completed Mental Impairment Evaluation Reports. Dr. Jimenez opined, both in this form and in testifying at claimant's hearing, that claimant was not able to work. Dr. Diez reported claimant had not stopped drinking despite advice to the contrary. On examination Dr. Diez found claimant to be oriented, irritable, with good immediate and remote memory. Judgment, attention, concentration, and stress tolerance were impaired. Dr. Diez prescribed mellaril and restoril. He opined that claimant was not fit for work, that the prognosis was guarded, and that he was not able to handle funds.

On this record, the ALJ concluded that claimant suffered from a serious mental condition manifested by chronic alcoholism, depression and anxiety. He also exhibited irritability, limited immediate memory, anti-social behavior, feelings of worthlessness and insomnia. The ALJ further concluded that as a result of this condition, claimant suffered moderate restrictions in his activities of daily living and ability to maintain social functioning, and that he often experienced deficiencies of concentration, persistence or pace that resulted in a failure to complete tasks in a timely manner. The ALJ further found that claimant never suffered from episodes of deterioration or decompensation in work or work-like settings.[7]

The ALJ specifically found that claimant had not lost his voluntary control over the intake of alcoholic beverages and that claimant had, instead, not cooperated with treatment. She further found that his overall capacity to function would improve if he took his prescribed medications. The ALJ concluded that claimant had a serious combination of impairments that prevented him from returning to his past relevant work as a bank teller, but that claimant

---

**6.** Dr. Rafols Saavedra did not complete a mental RFC assessment form nor a PRTF.

**7.** We note that there is no support for this last assessment. Both of the Secretary's nonexamining consultants indicated that there was insufficient evidence on which to rate claimant's experience of episodes of deterioration or de-

compensation in work or work-like settings. Moreover, in view of the circumstances attending claimant's departure from his job as bank teller, and the reference to his drinking on the job, what evidence there is on this issue suggests that claimant did occasionally decompensate in the work setting.

retained the residual functional capacity to perform unskilled work of light to medium exertional requirements, exclusive of jobs requiring the performance of complex tasks and frequent contact with others. Based on the vocational expert's testimony, the ALJ found that claimant could perform such jobs as that of a gluer and packer in the shoe industry, a material handler in the garment industry, and a mechanical device tester, and that he therefore was not disabled.

## II.

This court has not addressed what standard applies in evaluating disability claims based on alcoholism. The Secretary's regulations currently provide, in relevant part, that,

> If you have a condition diagnosed as addiction to alcohol or drugs, this will not, by itself, be a basis for determining whether you are, or are not, disabled. As with any other medical condition, we will decide whether you are disabled based on symptoms, signs, and laboratory findings.

*See* 20 C.F.R. § 404.1525(e).

In the past, the Secretary's regulations required proof of end organ damage to sustain a claim of disability based on alcoholism. This is no longer so. *See In re Petition of Sullivan,* 904 F.2d 826, 836–840 (3d Cir.1990) (discussing the historical development of the Secretary's evaluation of alcoholism claims). Disability by reason of alcoholism today may be shown by establishing that the addiction to alcohol has resulted in behavioral or physical changes which satisfy any of the nine enumerated impairment listings under 20 C.F.R., Part 404, Subpart P, App. 1, § 12.09 (Substance Addiction Disorders).[8] Where a claimant's condition does not meet or equal this list-

ing, the question arises as to whether alcoholism nonetheless can be disabling.

Substantial authority holds that a claimant who seeks disability benefits on grounds of alcoholism must prove that he is addicted to alcohol and has lost the ability to control his drinking. *See, e.g., Cooper v. Bowen,* 815 F.2d 557, 560–61 (9th Cir.1987); *Purter v. Heckler,* 771 F.2d 682, 698–699 (3d Cir.1985), *Ferguson v. Heckler,* 750 F.2d 503, 505 (5th Cir.1985); *Cannon v. Harris,* 651 F.2d 513, 519 (7th Cir.1981) (per curiam); *Hicks v. Califano,* 600 F.2d 1048, 1051 (4th Cir.1979); *Adams v. Weinberger,* 548 F.2d 239, 244 (8th Cir.1977). In addition, the claimant must show that his alcoholism precludes him from engaging in substantial gainful activity. *In re Petition of Sullivan,* 904 F.2d at 843; *Cooper,* 815 F.2d at 561. *See also Migneault v. Heckler,* 632 F.Supp. 153, 156 (D.R.I.1985) ("The claimant must prove that his alcoholism is *both* irremediable *and* sufficiently severe so as to disable him, as a practical matter, from performing substantial gainful employment"); *Crosby v. Heckler,* 638 F.Supp. 383, 385 n. 2 (D.Mass.1985).

■ We agree that alcoholism can constitute a compensable disability under this test. But we emphasize that even though alcoholism, by definition, imports a certain lack of control, evidence that a claimant has been diagnosed a chronic alcoholic is *not* sufficient to establish that the claimant has lost the ability to control his consumption of alcohol. This inquiry requires that we determine whether claimant has so far lost the capacity for self control that he has been " 'rendered impotent to seek and use means of rehabilitation.' " *See Adams v. Weinberger,* 548 F.2d at 245 (8th Cir.1977), *citing, Badichek v. Secretary of Health Education and Welfare,* 374 F.Supp. 940, 942–43 (E.D.N.Y.1974). And we reiterate that a diagnosis of alcoholism will not es-

---

**8.** These are: Organic mental disorders (§ 12.02); Depressive syndrome (§ 12.04); Anxiety disorders (§ 12.06); Personality disorders (§ 12.08); Peripheral neuropathies (§ 11.14); Liver damage (§ 5.05); Pancreatitis (§ 5.08); and Seizures (§ 11.02 or 11.03). Proof that alcoholism, or any substance addiction disorder, has resulted in conditions that meet or equal any of these listings will establish that the sub-

stance addiction disorder is disabling at step three of the sequential evaluation process. *But see In re Petition of Sullivan,* 904 F.2d at 844–846 (holding that only the severity requirements of the cross-referenced mental impairments must be met, while all of the requirements for the cross-referenced physical impairments must be met to prove alcoholism disabling at step three).

tablish disability unless there is a resulting functional loss that prevents a claimant from performing substantial gainful activity for a continuous period of at least twelve months. *In re Petition of Sullivan*, 904 F.2d at 845 (3d Cir.1990); *Moore v. Secretary of the United States Dept. of Health and Human Services*, 778 F.2d 127, 130 (2d Cir.1985). This result is consistent with the requirements for evaluating all disability claims, and reflects the reality that many alcoholics work. *In re Petition of Sullivan*, 904 F.2d at 845 ("Common medical understanding does not square with an assumption that every person who meets the clinical definition of alcoholism, and is thus unable to control his drinking, is *ipso facto* unable to perform *any* gainful activity.") *See also Singletary v. Secretary of Health Education and Welfare*, 623 F.2d 217, 223 (2d Cir. 1980) (Meskill, J., dissenting) ("many if not most alcoholics are gainfully employed.")

■ It is undisputed that claimant suffered from chronic alcoholism, early cirrhotic changes of the liver, and diabetes. The ALJ, following the principles discussed above, determined that the claimant had not lost the voluntary ability to control his alcohol intake and further retained the residual functional capacity to perform light unskilled work that did not involve complex tasks nor require contact with the public. The question is whether substantial evidence on the record as a whole supports this conclusion.

The conclusion that claimant had not lost the ability to control his drinking is supported by the testimony of claimant's treating psychiatrist, who indicated that claimant could function by taking his prescribed medications.[9] This evidence is bolstered by the claimant's positive work history, which reflects lengthy periods of consecutive employment even though he was, by all accounts, drinking during this time period. Moreover, both claimant's testimony and medical records support the conclusion that claimant took his medications. Even if he did not take them all the time, as his psychiatrist suggested, this does not establish that his alcoholism was disabling for a continuous period of at least twelve months. The fact that claimant was able to use professional help both in 1985 when he first saw Dr. Jimenez and again in 1987 after he lost his job indicates that he was not helpless to remedy his condition. The record as a whole supports the conclusion that claimant's use of alcohol was not beyond all control.

■ We also find that the ALJ's conclusion that claimant retained the capacity to perform light, unskilled work is supported by substantial evidence. Both nonexamining psychiatrists' assessments of claimant's mental RFC recorded findings consistent with the capacities required to perform light, unskilled work. *See* SSR 85–15 at 94 (CE 1985).[10] The vocational expert identified various positions which claimant remained capable of performing.[11] The

9. In response to questioning by the ALJ, Dr. Jimenez testified: "if he takes the pill he can control himself," and as follows: "Q: ... with the medication he can control himself. A: He can function. Q: That urgency for alcohol. A: That is correct."

10. This ruling provides that,

The basic demands for competitive remunerative unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting. A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base.

The RFCs by Drs. Vilar and Quinones noted either no significant limitations or only moderate limitations in each of these areas.

11. We note that this expert's testimony was in response to the hypothetical of the ALJ, which did not assume that claimant was drinking. In response to a hypothetical which made such an assumption, this witness testified that if claimant had to drink, "it would limit him a great deal, his working functions and he wouldn't be able to efficiently produce work." It could fairly be construed from this testimony that if claimant was drinking, he could not work. However, it is up to the Secretary to resolve conflicts in the evidence. Where there is substantial evidence supporting the conclusion that claimant could control his alcohol consumption and remained capable of light unskilled work with the caveats noted by the Secretary, we will not disturb these findings.

ALJ properly referred to the Grid as a framework and based her finding of non-disability on the vocational expert's evidence.

Contrary to claimant's arguments on appeal, the ALJ did not ignore claimant's nonexertional impairments. Rather, the ALJ duly considered the limitations imposed by claimant's condition by finding that claimant could no longer do his past relevant work. Moreover, where claimant submitted no evidence of pain nor of side effects from his medications, there was no need for the ALJ to undertake an inquiry under *Avery v. Secretary of Health and Human Services,* 797 F.2d 19 (1st Cir. 1986).

Claimant's remaining arguments on appeal are disposed of easily. The ALJ did not impermissibly substitute her lay assessment of claimant's RFC, but supportably relied on those submitted by the nonexamining consultant. The law in this circuit does not require ALJs to give greater weight to the opinions of treating physicians. *Tremblay v. Secretary of Health and Human Services,* 676 F.2d 11, 13 (1st Cir.1982). The ALJ was not required to accept the conclusions of claimant's treating physicians on the ultimate issue of disability. The ALJ's conclusion that claimant's ability to function would improve if he followed the prescribed treatment (medication) is supported by the testimony of Dr. Jimenez. Finally, the record shows that the ALJ acknowledged that the burden of proof shifted to the Secretary upon proof that claimant was not able to perform his past work as a bank teller. This burden was met by the testimony of the vocational expert.

*Judgment affirmed.*