Dow v. HHS                    CV-93-76-B    03/31/94

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW HAMPSHIRE


Forrest J. Dow

    v.                                    Civil No. 93-76-B

Secretary of Health and Human Services


**O R D E R**


Forrest Dow brings this action pursuant to 42 U.S.C.A. § 405(g) (West Supp. 1993), challenging a final determination by the Secretary of Health and Human Services ("Secretary") denying his application for Social Security disability benefits. Presently before the court are Plaintiff's Motion to Admit New Evidence, Plaintiff's Motion to Reverse the Decision of the Secretary, and Defendant's Motion for Order Affirming the Decision of the Secretary.


## I.  **STANDARD OF REVIEW**

Pursuant to 42 U.S.C.A. § 405(g), the court is empowered to "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the

Secretary, with or without remanding the cause for a rehearing."
In reviewing a Social Security decision, the factual findings of
the Secretary "shall be conclusive if supported by 'substantial
evidence.'"  Irlanda Ortiz v. Secretary of Health & Human Serv.,
955 F.2d 765, 769 (1st Cir. 1991) (quoting 42 U.S.C. § 405(g)).[1]
Thus the court must "'uphold the Secretary's findings . . . if a
reasonable mind, reviewing the evidence in the record as a whole,
could accept it as adequate to support [the Secretary's]
conclusion.'"  Id. (quoting Rodriguez v. Secretary of Health &
Human Serv., 647 F.2d 218, 222 (1st Cir. 1981)).  Moreover, it is
the Secretary's responsibility to "determine issues of
credibility and to draw inferences from the record evidence," and
"the resolution of conflicts in the evidence is for the
Secretary, not the courts."  Irlanda Ortiz, 955 F.2d at 769
(citing Rodriguez, 647 F.2d at 222).

## II.  BACKGROUND

Claimant was born on February 4, 1953.  He has a fifth or

---

[1] The Supreme Court has defined 'substantial evidence' as
"such relevant evidence as a reasonable mind might accept as
adequate to support a conclusion."  Richardson v. Perales, 91 S.
Ct. 1420, 1427 (1971).  "This is something less than the weight
of the evidence, and the possibility of drawing two inconsistent
conclusions from the evidence does not prevent an administrative
agency's finding from being supported by substantial evidence."
Consolo v. Federal Maritime Comm'n, 86 S. Ct. 1018, 1026 (1966).

sixth grade education and can read simple words and write his name. His job history includes positions as a shoe laster, a general laborer, and a carpenter. Claimant asks this court to review the findings and determinations of the Secretary, and the new evidence he seeks to admit to the court, and either remand for further hearing or rule that he is entitled to benefits from June 14, 1990 to date.

A. <u>Medical History</u>

Claimant's medical records indicate that he suffered a work related accident on August 26, 1988 while lifting a heavy door. He was treated by Dr. David Glazer, an orthopedic surgeon, for complaints of back pain radiating down his left buttock and leg. Initial x-rays revealed spondylolisthesis at L5-S1. A CAT scan showed a question of a disc herniation at L4-L5, but a myelogram was negative. Physical therapy was prescribed, which improved claimant's condition minimally, and Dr. Glazer recommended surgery. The claimant declined surgery, and sought a second opinion. Dr. William Lipman reviewed claimant's previous test results and confirmed the diagnosis of a herniated disc at L4-5, but felt that because the herniation was so small, the claimant was a better candidate for an epidermal steroid injection or

percutaneous suction discectomy rather than surgery. Claimant declined both treatments and continued with physical therapy.

Claimant sought psychological help at the Seacoast Mental Health Center in March 1989, where he complained of sleeping problems, nervousness, and headaches. The psychologist felt that claimant's problems stemmed from a need to work through the loss of his daughter, who was violently murdered. She recommended short term therapy to help claimant work through his anger and helplessness.

Complaining of left chest and shoulder pain, claimant was admitted to Catholic Medical Center in June 1989. On admission claimant's EKG was normal, serial cardiac enzymes showed no evidence of myocardial infarction, and telemetry monitoring showed no significant arrhythmias. Dr. James Clayburgh treated claimant with a cardiac catheterization, which revealed a high grade 90% stenosis of the left anterior descending artery with otherwise normal coronary circulation. Dr. Clayburgh reported that the claimant tolerated the procedure well and recovered uneventfully.

Claimant returned to physical therapy in August, 1989, when Dr. Lipman indicated that although his herniated disc had resolved, he did not feel that Mr. Dow could return to manual

4

labor and instead must be retrained. A visit in September revealed that the claimant was continuing to improve with pain in the morning which sometimes extended down his left leg. In February 1990, claimant received a epidural steroid injection for inflammation, and was started on Talwin NX and Indocin SR. Claimant continued to be treated for back pain, but declined a suction discectomy, preferring an operation if his condition worsened.

Claimant was admitted for a second coronary angiography and angioplasty in December 1989, and was successfully treated by Dr. John O'Meara. Follow-up visits with Dr. Clayburugh revealed that claimant had a minimal luminal irregularity in the left anterior descending artery, however his other coronary arteries were normal, with excellent post-angioplasty recovery. Claimant had a normal chest x-ray and EKG.

Claimant was examined by Dr. Clinton Miller, a neurosurgeon, in March of 1990. He complained of a sharp sudden pain in his left buttock which progressed into his left calf and the heel of his foot, and eventually his entire left leg and hip ached, restricting his walking and standing activity. He received a Medrol Dosepak and a course of epidural steroid injections, however they did not help his symptoms. He also complained of

5

numbness and tingling in his foot and toes.  Lumbosacral x-rays showed spondylolisthesis at L5-S1 with a minimal anterior slippage of L5 forward over the sacrum.  A CAT scan showed some disc herniation with left protrusion of soft tissue with L4-L5 encroaching on the left nerve root.  Dr. Miller opined the claimant was totally disabled at the time and recommended a L4-L5 hemi-laminotomy and discectomy.  This surgery was scheduled, but had to be cancelled due to an insurance problem.  In May, 1990 Dr. Lipman noted that claimant showed much improvement, with easy heel and toe walking and no weakness.  No surgery was scheduled and claimant said that he would call if he got worse.  Dr. Lipman noted that he felt Mr. Dow was capable of returning to light work as of June, 1990.

Claimant continued to be treated by Dr. Lon Sherman, a cardiologist, from May through September, 1990.  Claimant complained of chest pain in May, but cardiac ultrasound and echodoppler testing yielded normal results, with no evidence of wall motion abnormalities, no chamber enlargement, or chamber hypertrophy.  Claimant saw Dr. Sherman in August, 1990, and complained of chest pain which was not relieved by medication.  Dr. Sherman advised claimant of the possibility of another catheterization if his symptoms continued, and stated that the

6

possibility of restenosis could not be ruled out.  In September, claimant went to the emergency room, complaining of chest palpitations which lasted for 20 minutes.  He also reported symptoms of throat pain but no dizziness, nausea or shortness of breath.  A physical examination yielded normal results, and he was released with a recommendation to visit his doctor the following day.  Dr. Sherman saw claimant two additional times between September and December, 1990, at which time he complained of general fatigue, and vague, migratory chest pains, not typical of angina.  Dr. Sherman indicated in January, 1991, that he believed claimant was physically well at that time, and he placed him on a limited medical regimen for his hypertension.

In January, 1991, claimant returned to the Seacoast Medical Center complaining of sleep difficulties, anger, and a strong sense of hopelessness and not caring about anything.  Valium was prescribed.  The doctor at the clinic opined that claimant suffered from post-traumatic stress disorder, which rendered claimant totally disabled, inhibiting his ability to follow doctor's orders, and caused claimant's physical problems.  Claimant underwent hemi-laminectomy and disk excision surgery in June, 1991, and made a good recovery with minimal leg pain.  He had normal EKG and chest x-rays at the time.  Within a month

7

after surgery, Dr. Lipman observed claimant to be moving freely with no tenderness to palpitation, no calf pain, and a full range of motion. Claimant was again referred to physical therapy.

In December, 1991, Dr. Schneller, of the Seacoast Medical Center opined that claimant was totally disabled due to his post-traumatic stress disorder, major depression, and passive aggressive personality disorder. Dr. Schneller indicated that claimant's emotional problems had a multiplier effect on his physical problems.

B. <u>Procedural History</u>

Claimant filed an application for disability insurance benefits on or about May 7, 1990. The claim was denied on October 25, 1990. His request for reconsideration was likewise denied on June 13, 1991. Claimant then requested, and received, a hearing before an Administrative Law Judge (ALJ) on November 19, 1991. The ALJ found that:

1. The claimant met the disability insured status requirements of the Act on August 26, 1988, the date the claimant stated he became unable to work, and continues to meet them through September 30, 1993.

2. The claimant has not engaged in a substantial gainful activity since September 26, 1988.

3. The medical evidence establishes that the claimant has

8

severe depression, cardiac problems and L4-5 radiculopathy status post-disc excision with low back pain, but that he does not have an impairment or combination of impairments listed in or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4.

4. The claimant's hearing testimony was relating to the period between August 26, 1988 and June 14, 1990 was generally consistent with the medical information documented in the record and is found credible. However, the claimant's hearing testimony regarding the period after June 14, 1990 was not entirely credible with respect to his allegations of pain because as analyzed on the criteria of Social Security Ruling 88-13 and the <u>Avery</u> court order, the allegations did not consistently support a finding of disability. Rather they supported a determination that the claimant had sufficient residual functional capacity for work activity in the sedentary range.

5. During the period August 26, 1988 to June 14, 1990, the claimant had the residual functional capacity to perform the physical exertional requirements of work except for the exertional requirements of very heavy, heavy, medium, light and the full range of sedentary work. As of June 14, 1990, the claimant could perform all of the requirements except for the exertional requirements of very heavy, heavy, medium and light work and the nonexertional limitations of only minimal bending, no running, jumping, frequent squatting or getting in unusual or tight positions (20 C.F.R. § 404.1545).

6. The medical evidence establishes that there has been improvement in the claimant's medical impairment since August 26, 1988, the alleged onset of disability.

7. This medical improvement is related to the claimant's ability to work (20 C.F.R. § 404.1594).

8. The claimant is unable to perform his past relevant work as a carpenter.

9. Prior to June 14, 1990, the claimant had the residual functional capacity for less than the full range of

9

sedentary work. On and after June 14, 1990, the claimant regained the residual functional capacity to perform the full range of sedentary work (20 C.F.R. § 404.1567).

10. The claimant is currently 38 years old, which is defined as a "younger person" (20 C.F.R. § 404.1563).

11. The claimant has less than a limited (sixth grade) education (20 C.F.R. § 404.1564).

12. The claimant does not have any required work skills which are transferable to the skilled or semi-skilled work functions of work (20 C.F.R. § 404.1568).

13. Section 404.1569 of Regulations No. 4 and Rules 201.24, 201.25 and 201.26, Table No. 1 of Appendix 2, Subpart P, Regulations No. 4, direct a conclusion that the claimant, considering his residual functional capacity, age, education, and work experience, was not disabled between August 26, 1988 and June 14, 1990. Considering the claimant's nonexertional limitations, vocational testimony establishes that there were not a significant number of jobs in the national economy which the claimant could have performed between August 26, 1988 and June 14, 1990.

14. Section 404.1569 of Regulations No. 4 and Rules 201.24, 201.25 and 201.26, Table No. 2, Appendix 2, Subpart P, Regulations No. 4 direct that considering the claimant's residual functional capacity, age, education, and work experience, he be found not disabled commencing June 14, 1990.

15. The claimant was under a "disability", as defined in the Social Security Act, during the period August 26, 1988 to June 14, 1990 but not thereafter (20 C.F.R. § 404.1520(f)).

A request for review made to the Appeals Council was denied on December 14, 1992. Claimant filed the instant appeal on or about February 5, 1993.

10

# III.  DISCUSSION

## A.  Issues

Claimant asks this court to admit new evidence not submitted to the ALJ or the Appeals Council.  He argues that this evidence was unavailable at the time of the hearing before the ALJ. Claimant further contends that the evidence could affect the ALJ's decision if he were given the opportunity to consider it. He therefore requests that I remand the case to allow this evidence to be considered.  Claimant alternatively seeks to have the ALJ's decision denying him benefits from June 14 1990 to date reversed because he contends that the ALJ relied on incorrect legal standards when reaching his conclusion.  I consider these arguments in turn.

## B.  Analysis

### 1.  Motion to Admit New Evidence

Pursuant to 42 U.S.C. § 405(g), this court has the authority to "order additional evidence to be taken before the Secretary, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding."

11

42 U.S.C. § 405(g). Remand on the basis of new evidence is appropriate if the Court concludes that the Secretary's decision might reasonably have been different had the new evidence been before the Secretary at the time of his or her decision. Evangelista v. Secretary of Health and Human Services, 826 F.2d 136, 140 (1st Cir. 1987); Falu v. Secretary of Health and Human Services, 703 F.2d 24, 27 (1st Cir. 1983). It is well established that information which only duplicates or reinterprets evidence previously submitted at an administrative hearing will not constitute sufficient grounds for remand. Evangelista, 826 F.2d at 139 (citing Teal v. Mathews, 425 F. Supp. 474, 481 (D. Md. 1976)).

The First Circuit has clarified § 405(g), stating that "to qualify under the new/material standard, the discovered data must be meaningful--neither pleonastic nor irrelevant to the basis for the earlier decision." Evangelista, 826 F.2d at 139. Further, "good cause" exists where "the evidence surfaces after the Secretary's final decision and the claimant could not have obtained the evidence during the pendency of that proceeding." Perry v. Shalala, 1993 WL 541707 at *2 (D.N.H. Sept. 23, 1993) (quoting Lisa v. Secretary of Health and Human Services, 940 F.2d 40, 44 (2d Cir. 1991)).

Claimant seeks to admit an evaluation performed by Dr. Frank Graf, an orthopedic surgeon, who treated him from September 10 through November 25, 1992. Claimant asserts that this evidence is new and material because Dr. Graf evaluated him as being unable to return to even sedentary work. The Secretary asserts that this assessment alone is insufficient to merit a remand because the evaluation is based on medical evidence substantially the same as the medical evidence already in the record, and that claimant has failed to demonstrate good cause for not submitting the evidence to the Appeals Council. Because I find that claimant has failed to assert that he has good cause for not submitting the report to the Appeals Council prior to the Secretary's final decision, it is unnecessary to determine whether the evidence claimant wishes to submit is new and/or material.

Dr. Graf's assessments are contained in letters dated October 2, 1992 and November 25, 1992. The Appeals Council rendered its decision on December 14, 1992, thus making the Secretary's decision final as of that date. Because claimant offers no explanation for failing to submit Dr. Graf's reports to the Appeals Council, I find that he has failed to establish good cause for failing to submit the evidence to the Secretary prior

13

to a final decision.  I therefore deny claimant's request to admit this evidence.

### 2. Motion to Reverse

Claimant contends that the Secretary's decision denying him benefits from June 1990 to the present date was not supported by substantial evidence because: 1) the ALJ failed to consider the effects of claimant's physical and psychological impairments, 2) the ALJ put excessive weight on Dr. Lipman's opinion of claimant's work capacity, 3) the ALJ did not fully and accurately describe claimant's limitations in posing hypothetical questions to the VE, and 4) the ALJ failed to make specific credibility findings concerning claimant's pain testimony.  I consider these arguments in turn.

### a. The Combined Effects of Claimant's Physical and Psychological Impairments

Claimant contends that the ALJ erred as a matter of law because he did not assess the combination of claimant's physical and psychological impairments in assessing his residual functional capacity ("RFC").  This contention is completely without merit.

The ALJ's decision detailed his findings of both the claimant's physical and mental impairments and their effect on

14

his functional capacity.  First, he evaluated the claimant's physical condition as a result of his back and heart problems, detailing the medical evidence extensively.  He noted the symptoms and complaints that claimant had expressed to his doctors after the accident in 1988 through July 1991.  He also noted the significant improvement in claimant's back condition as reported by Dr. Lipman in September 1990, which continued to improve through July 1991.  He noted claimant's extensive medical history related to his heart condition, including claimant's two significant operations and symptoms between August 1988 through June 1990.  The ALJ also noted claimant's improved status as reported by his doctors on August 1990, the diagnosis by one doctor that claimant was limited by his heart disease rather than completely disabled, and another doctor's vague diagnosis that claimant was "probably disabled."  Finally, the ALJ noted claimant's extensive psychological history and, as reported by his doctors, the improvement in this condition over time.  It was only after considering all of these factors that the ALJ assigned claimant the RFC for sedentary work.

The findings of the Secretary are conclusive if supported by substantial evidence and should be upheld even in those cases in which the reviewing court, had it heard the same evidence de

15

novo, might have found otherwise.  Lizotte v. Secretary of Health and Human Services, 654 F.2d 127, 128 (1st Cir. 1981).  Because a review of the medical record in this case reveals that the Secretary's conclusions in assessing claimant's RFC clearly included analysis of all of claimant's disabilities I find that his conclusion was supported by substantial evidence, and it should therefore be affirmed.

> b.   The ALJ put excessive weight on Dr. Lipman's opinion of claimant's work capacity.

Claimant next contends that the ALJ gave excessive weight to Dr. Lipman's opinion of the claimant's work capacity.  He contends that the ALJ ignored all of the evidence except Dr. Lipman's opinion when determining that the claimant had a capacity to perform sedentary work.  This argument is also completely without merit.

The regulations give the ALJ wide discretion in weighing evaluations by treating physicians.  They require that a treating physician's opinion be "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [not] inconsistent with other substantial evidence in [the] case record."  20 C.F.R. § 404.1527(d)(2).  It is firmly established that the ALJ is not required to accept the conclusions of any

16

particular physician on the ultimate issue of disability.  See
Arroyo v. Secretary of Health and Human Services, 932 F.2d 82
(1st Cir. 1991).

Claimant's assertion that the ALJ did not consider other
evidence besides Dr. Lipman's assessment can be easily refuted by
a reading of the ALJ's opinion.  As detailed above, the
assessment of claimant's RFC came only after a careful
examination of all three of claimant's medical problems and
history.  This examination included an assessment of not only Dr.
Lipman's opinion, but all of the medial results and Dr. Miller's
assessment regarding claimant's back problems.  It is clear from
a review of the record that the Secretary's determination of
claimant's RFC was based on substantial evidence in addition to
Dr. Lipman's opinion.

### c.   Hypotheticals Posed to the VE

Claimant next contends that the ALJ did not fully and
accurately describe claimant's limitations in posing hypothetical
questions to the VE because he did not consider claimant's
depression and did not consider claimant's medication side
effects.  I disagree.

In determining whether a significant number of jobs exist in
the economy that plaintiff could perform, the ALJ may rely on VE

testimony in conjunction with the Medical-Vocational Guidelines ("the Grid").  See Ortiz v. Secretary of Health and Human Services, 890 F.2d 520,527-28 (1st Cir. 1989).

### (1) claimant's depression

In the first hypothetical posed to the VE the ALJ included the following restrictions:

> [A] worker is 38 years of age and has a sixth grade education.  And does not have proficiency in reading and writing.  Can, read minimally, but writing is, is, is not a skill. . . . Claimant was limited to a sedentary work function, and at a minimal could not perform a job unless there was minimal bending, no running, jumping, frequent squatting or getting in unusual or tight positions.

In his second hypothetical the ALJ included the restriction "that the claimant would need a low stress job requiring little or no contact with fellow employees or supervisors."  This restriction is supported by the medical evidence as given by Dr. Schneller from the Seacoast Mental Health Center who expressed concern that claimant's personality problems could cause claimant to become involved in confrontations with co-workers or supervisors.  Although Dr. Schneller opined that he believed claimant to be totally disabled from gainful employment, he identified no other evidence to support this conclusion.  The ALJ is not required to blindly accept the conclusions of the

18

claimant's treating physicians on the ultimate issue of disability, <u>Arroyo v. Secretary of Health and Human Services</u>, 932 F.2d 82 (1st Cir.1991), and instead may weigh the medical evidence in the case record and come to his or her own conclusion. So long as that conclusion is supported by substantial evidence, I am required to uphold it. <u>See</u> <u>Irlanda Ortiz</u>, 955 F.2d at 769-70 (upholding ALJ's determination that claimant's mental condition did not substantially reduce his ability to perform a full range of work).

Here the ALJ's determination not to credit Dr. Schneller's unsupported assertion that the claimant was totally disabled from gainful employment is adequately supported by the record. In coming to his conclusion, the ALJ noted that the only specific limitation on plaintiff's functional capacity identified by Dr. Schneller was that plaintiff should be restricted from contact with supervisors and fellow employees. The ALJ further accepted these facts and incorporated them into the second hypothetical. This restriction is supported by numerous reports of claimant's doctors. Hence, I find it to be supported by substantial evidence. Because the VE testified that a person with a restriction as listed in hypothetical two would be able to perform a surveillance job, which numbered 700 in New Hampshire

19

and about 170,000 nationwide, the Secretary had substantial evidence to support the conclusion that there were a significant number of jobs in the economy which the plaintiff was capable of performing.

## (2) side effects of claimant's medication

Claimant also contends that the ALJ did not consider the side effects of claimant's medications.  When the VE was asked what effect dizziness or drowsiness would have on the surveillance job, the VE responded that the dizziness would only effect the job if the dizziness blurred one's vision so that one could not see the image clearly.  Claimant's testimony concerning the side effects of his medication were that it "left him a little bit fuzzy."  Claimant gave no testimony that his vision was significantly blurred.  Thus the ALJ's decision that claimant would be capable of performing this job was supported by substantial evidence, and his finding is upheld on this issue.

      d.    The ALJ failed to make specific credibility findings concerning the credibility of claimant's pain testimony.

Claimant's final claim is that the ALJ failed to make specific findings to support his conclusion that claimant's pain complaints after June 14, 1990 lacked credibility.  I disagree.

20

In determining the weight to be given to allegations of pain, the First Circuit has stated that "complaints of pain need not be precisely corroborated by objective findings, but they must be consistent with medical findings." Dupuis v. Secretary of Health and Human Services, 869 F.2d 622, 623 (1st Cir. 1989) (citing Avery v. Secretary of Health and Human Services, 797 F.2d 19, 21 (1st Cir. 1986)). Further, "[w]hen there is a claim of pain not supported by objective findings, the adjudicator is to `obtain detailed descriptions of daily activities by directing specific inquiries about the pain and its effects to the claimant, his/her physicians . . . and other third parties . . . .'" Avery, 797 F.2d at 23 (quoting Program Operations Manual System (POMS), DI T00401.570). If the ALJ has followed this directive, "[t]he credibility determination by the ALJ, who observed the claimant, evaluated his [or her] demeanor, and considered how that testimony fit in with the rest of the evidence, is entitled to deference, especially when supported by specific findings." Frustaglia v. Secretary of Health and Human Services, 829 F.2d 192, 195 (1st Cir. 1987).

Here the ALJ accepted claimant's complaints regarding the time period of August 1988 to June 14, 1990, but found that claimant's complaint of constant pain after that time period was

22

not supported by the record. In response to the ALJ's questions, claimant testified that his biggest problem was his back, which would ache and cause his leg to ache. He testified that he had this ache every day, but if he stood, it would go away for 20 minutes to an hour. He testified that he spent his day "doing what he could around the house" and watching T.V. He asserted that he was only able to do little things around the house, and only for brief periods of time before his back began to bother him and he had to sit or lay down. He testified that the furthest trip he had taken was the 40-mile trip to the hearing, which required him to stop after 20 minutes of driving. He further testified that he walks around malls to get exercise and that he visits his sisters, who live within one mile of his house, "every now and then." He testified that he could lift a gallon of milk, that stairs do not bother him, that he could make a fist, hold a coffee or teacup, turn a doorknob, and put his arms out for short periods of time without trouble. He stated that he went into town every day, either to the store, for coffee, or to the Post Office.

In response to questions from his attorney, claimant testified that he could only stand for 20 minutes and that he was required to lay down two to three times each day. He also

23

testified that prior to his angioplasties, his shoulder would ache whenever he walked, but that now it usually only ached when he overexerted himself, but that it hurt the previous night for no reason at all. He further testified that when he performed activities that required repetitive motion of his arms it caused them to ache. He asserted that he did not feel that he would be capable of performing a small assembly job for eight hours a day because after 4-5 hours, he would experience shoulder pain.

The ALJ determined that claimant's allegations of pain after June 14, 1990 were not entirely credible "because as analyzed on the criteria of Social Security Ruling 88-13 and the Avery court order, the allegations did not support a finding of disability. Rather, they supported a determination that the claimant had sufficient residual functional capacity for work activity in the sedentary range." As I determine that this specific finding is supported by substantial evidence, I reject the claimant's argument.

### III. CONCLUSION

Plaintiff's Motion to Admit New Evidence (document #9) is denied. Plaintiff's Motion to Reverse the Decision of the Secretary (document #8) is denied. Defendant's Motion for Order

24

Affirming the Decision of the Secretary (document #7) is granted.

SO ORDERED.

_____
Paul Barbadoro
United States District Judge

March 31, 1994

cc:  Raymond J. Kelly, Esq.
     Gretchen L. Witt, Esq.