Sapier v. HHS                          CV-94-352-SD  05/11/95
                UNITED STATES DISTRICT COURT FOR THE

                    DISTRICT OF NEW HAMPSHIRE


Ronald Sapier

     v.                                         Civil No. 94-352-SD

Secretary of Health and Human Services


                            O R D E R


     Pursuant to section 205(g) of the Social Security Act, 42

U.S.C. § 405(g), plaintiff Ronald Sapier seeks judicial review of

a final decision of the Secretary of Health and Human Services

denying his claims for disability insurance benefits.  Presently

before the court are (1) plaintiff's motion to reverse the

Secretary's decision and (2) defendant's motion to affirm the

Secretary's decision.


                          Background

     Plaintiff Ronald Sapier was born on April 15, 1945, in

Perry, Maine.  He currently resides in Ashland, New Hampshire,

with his wife and two daughters.  Transcript of Administrative

Record (Tr.) 51-52.  Sapier has a GED and has taken a supervisory

training course and a course on electrical principles.  Tr. 53.

     Sapier's work history includes employment as a laborer in

the construction field between 1973 and 1976 and between 1977 and 1978. He subsequently worked for approximately six months between 1979 and 1980 as a vacuum cleaner sales and service representative.

In April of 1980 Sapier went to work at a textile mill in Ashland. Over a ten-year period, he was employed at the mill as a machine operator, a floor man, and an expeditor. He left his job at the mill on April 13, 1990, because of back problems.

In addition to his job at the textile mill, Sapier worked one day per week as a gasoline station attendant between 1984 and April of 1990. Due to his back problems, Sapier left this job at the same time he left his job at the mill.

Since 1990, Sapier has experienced numerous health problems, the combination of which purportedly leaves him unable to engage in any substantial gainful activity.

## Procedural History

As a result of his medical problems, Ronald Sapier has filed three separate applications for disability insurance benefits, each alleging an inability to work since April 13, 1990. His first application, filed on August 9, 1991, was denied on September 23, 1991. Tr. 125-32. He did not appeal this decision.

Sapier filed a second application for disability insurance benefits on January 21, 1992. Tr. 146-48. That application was denied initially and upon reconsideration. Tr. 150-55; 158-62. No further appeal of this denial was taken.

Sapier filed a third application for disability insurance benefits on January 25, 1993. Tr. 180-82. This application was denied initially and upon reconsideration. Tr. 183-87; 190-94.

Sapier filed a timely request for a de novo hearing on his third application before an Administrative Law Judge (ALJ). Tr. 195. Sapier, who was represented by counsel at the October 20, 1993, hearing, testified at the hearing, along with his wife and a vocational expert.

On November 18, 1993, the ALJ issued his decision, finding that Sapier was not disabled. Tr. 21-29. Applying the five-step sequential evaluation prescribed by 20 C.F.R. § 404.1520, the ALJ found that (1) Sapier has not engaged in substantial gainful employment since April 13, 1990; (2) Sapier has "severe diabetic neuropathy, myofascial complaints with fibromyalgia, colitis, depressive symptoms and a sleep disturbance . . . .", Tr. 28; (3) Sapier's impairments or combination of impairments does not meet or equal the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) Sapier's impairments do not prevent him from doing his past relevant work as a vacuum cleaner salesperson; and (5)

Sapier has a residual functional capacity (RFC) for a range of light work.[1]  The ALJ further found that Sapier's "allegations of inability to work are not credible."  Tr. 28.

On May 10, 1994, the Appeals Council of the Social Security Administration denied Sapier's request for review of the ALJ's decision.  Tr. 8-9.  The Appeals Council subsequently vacated that decision in order to review additional evidence.  However, after reviewing said evidence, the Appeals Council again denied Sapier's request for review, thereby rendering the ALJ's decision final.

In the present action, Sapier moves for an order reversing the Secretary's decision on the grounds that the following findings are not supported by substantial evidence:

(1) that Sapier's diabetes mellitus does not meet or equal the impairment listed at 20 C.F.R. Pt. 404, Subpt. P, App. 1, Sec. 908;

(2) that Sapier's combination of impairments does not meet or equal the musculoskeletal impairment listed at 20 C.F.R. Pt. 404, Subpt. P, App. 1, Sect. 1.09;

(3) that Sapier's past relevant work included work as a

---

[1]The ALJ found Sapier capable of performing the full range of light work "except for work involving lifting or carrying objects weighing in excess of 20 pounds or working at or above shoulder level (20 CFR 404.1545)."  Tr. 28.

4

salesman; and

(4) that Sapier could perform a limited range of light work.

Defendant opposes plaintiff's motion and moves for an order affirming the Secretary's decision on the ground that said decision is supported by substantial evidence.

## Discussion

### 1. Standard of Review

Pursuant to 42 U.S.C. § 405(g), this court, upon review of a final decision of the Secretary, is empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the case for a rehearing." 42 U.S.C. § 405(g) (Supp. 1994).

However, the court's review of the Secretary's decision is limited. Section 405(g) provides that the Secretary's factual findings shall be conclusive if they are supported by "substantial evidence." "Substantial evidence" means "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); Rodriguez v. Secretary, 647 F.2d 218, 222 (1st Cir.

1981).

Further, substantial evidence "is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Consolo v. Federal Maritime Comm'n, 383 U.S. 607, 620 (1966) (citing NLRB v. Nevada Consolidated Copper Corp., 316 U.S. 105, 106 (1942)). Thus, the decision of the Secretary must be affirmed, "even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." Rodriquez Pagan v. Secretary, 819 F.2d 1, 3 (1st Cir. 1987), cert. denied, 484 U.S. 1012 (1988) (citing Lizotte v. Secretary, 654 F.2d 127, 128 (1st Cir. 1981)).


2. Listed Impairments (Step 3)

At Step 3 of the sequential analysis, the claimant bears the burden of proving that he has an impairment that meets or equals an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. Dudley v. Secretary, 816 F.2d 792, 793 (1st Cir. 1987). If the claimant meets his burden, the Secretary is required to find the claimant disabled without further consideration of his age, education, and work experience. 20 C.F.R. § 1520(d).

6

a.  Section 9.08

Plaintiff asserts that the Secretary failed to consider whether his impairments met the listed impairment for diabetes mellitus,[2] 20 C.F.R. Pt. 404, Subpt. P, App. 1, Sect. 9.08 (1994).  That listing states in relevant part,

> *Diabetes mellitus.*  With:
> A.  Neuropathy demonstrated by significant and persistent disorganization of motor function in two extremities resulting in sustained disturbance of gross and dexterous movements, or gait and station (see 11.00C);
> . . . .

Section 11.00C, one of the listings for neurological impairments, states,

> *Persistent disorganization of motor function* in the form of paresis or paralysis, tremor or other involuntary movements, ataxia and sensory distrubances [sic] (any or all of which may be due to cerebral cerbellar [sic], brain stem, spinal cord, or peripheral nerve dysfunction) which occur singly or in various combination, frequently provides the sole or partial basis for decision in cases of neurological impairment.  The assessment of impairment depends on the degree of interference with locomotion and/or interference with the use of fingers, hands, and arms.

20 C.F.R. Pt. 404, Subpt. P, App. 1, Sect. 11.00C.

_____

[2]Diabetes mellitus is "a chronic syndrome of impaired carbohydrate, protein, and fat metabolism owing to insufficient secretion of insulin or to target tissue insulin resistance." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 457 (28th ed. 1994).

The ALJ found that "[t]he medical evidence establishes that the claimant has severe diabetic neuropathy . . . but that he does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4."  Tr. 28.  The ALJ did not, however, make any specific findings as to why Sapier's condition did not meet or equal the section 9.08 listing for diabetes mellitus.  Although the ALJ's failure to make such specific findings renders this court's review more difficult, the court may nonetheless affirm the ALJ's finding that Sapier's diabetes mellitus does not meet or equal a listing if that finding is supported by substantial evidence.

The ALJ did find that Sapier suffered from diabetes mellitus and that this condition "is not sufficiently controlled by medication . . . ."  Tr. 26.  Therefore, the question presented here is whether the ALJ's finding that Sapier does not have the associated neuropathy required to meet or equal the section 9.08 listing is supported by substantial evidence.

Beginning in early 1991, Sapier began complaining to Dr. Miller of pain and cramping in his hands and fingers, Tr. 236, and that his hand was "shaking all the time," Tr. 237.  Dr. Miller referred Sapier to Dr. L.P. Zyskowski who, upon examination, opined that Sapier was likely suffering from "an

8

early fibrosing syndrome related to his diabetes." Tr. 238. Dr. Zyskowski in turn referred Sapier to Dr. Michele Gaier Rush, a neurologist, to determine if Sapier's condition "is a neuropathy or just related to his diabetes." Id.

After her initial physical examination of Sapier on February 21, 1991, Dr. Rush scheduled Sapier for electromyograph (EMG) nerve conduction studies. Tr. 240. Dr. Rush's interpretation of the EMG study conducted on March 6, 1991, was as follows:

> This is a markedly abnormal study and probably represents diffuse diabetic sensory and motor polyneuropathy with a superimposed carpal tunnel syndrome on the right and possibly an early carpal tunnel syndrome on the left. There was no evidence of cervical de-innervation. There was evidence of denervation in the right APB muscle.

Tr. 241.

Dr. Rush subsequently referred Sapier back to Dr. Miller for evaluation of his carpal tunnel problems and for evaluation of his lower back "for the symptoms of intermittent leg weakness." Tr. 243. After examining Sapier on March 27, 1991, Dr. Miller opined that Sapier's problem with his arms, wrists, and hands "is certainly in large part due to his diabetic neuropathy, but the carpal tunnel syndrome is probably making it a little bit worse. . . ." Tr. 244. Dr. Miller performed a carpal tunnel release on Sapier's left hand in April 1991, and on

9

his right hand in June 1991.  Tr. 245-46.

On examination in July 1991, Dr. Miller noted that the carpal tunnel releases had provided Sapier with some relief, but he also noted that Sapier "still gets some aching in the [right] wrist and still has his tremor which hasn't been clearly defined."  Tr. 247.  Dr. Miller again pointed out that "a lot of his problems are due to his diabetes and diabetic neuropathy." Id.

Dr. Rush continued to treat Sapier while Sapier was seeing Dr. Miller for treatment of his bilateral carpal tunnel syndrome. Dr. Rush's sensory examination of Sapier on October 4, 1991, revealed "decreased sensation in the entire right upper extremity and some possible stocking glove distribution loss in the lower extremities, although not consistent.  Deep tender reflexes are absent throughout even with reinforcement."  Tr. 248.  However, Sapier's cerebellar exam and motor exams were normal, and formal romberg testing was negative.  Tr. 248-49.  Examination on November 19, 1991, again revealed decreased sensation and hyporeflexia throughout, but no motor weakness.  Tr. 240.  Dr. Rush's diagnosis at this point was "probable cervical radiculopathy."[3]  Tr. 250.

_____

[3]Cervical radiculopathy is disease of the nerve roots in the neck.  DORLAND'S, supra, at 303, 1404.

10

Dr. Rush's final examination of Sapier was on July 1, 1992. Dr. Rush again found no motor weakness on examination, but noted that Sapier's "reflexes remain hyporeflexic throughout." Tr. 256. Dr. Rush, noting that she was "not really doing anything more for him," referred Sapier to the chronic pain clinic at Dartmouth Hitchcock Medical Center.

Social Security regulations require the Secretary to evaluate every medical opinion received. 20 C.F.R. § 404.1527(d) (1994). Said regulations also generally require the Secretary to give more weight to a claimant's treating sources

> since these sources are likely to be the medical professionals most able to provide a detailed longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

20 C.F.R. § 404.1527(d)(2). Further, the Secretary will give a treating source's opinion controlling weight if his or her "opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record . . . ." Id. The regulations also provide that the Secretary "will always give good reasons in our notice of determination or decision for the

11

weight we give our treating source's opinion."[4]  Id.

Having treated Sapier on a regular basis for over sixteen months, Dr. Rush clearly qualifies as a "treating physician" under the Social Security Regulations.  Accordingly, her medical opinion that Sapier suffers from diffuse diabetic sensory and motor polyneuropathy is entitled to some weight, if not controlling weight.

Despite the obvious relevance of Dr. Rush's medical opinions to a determination of whether plaintiff's condition meets or equals the impairment listed at section 9.08, the ALJ failed to even mention Dr. Rush's medical opinions, much less determine the weight to which such opinions are entitled, in his decision. Because the medical evidence obtained from Dr. Rush includes evidence that could support a finding that Sapier meets or equals the section 9.08 listing for diabetes mellitus, the court finds that the ALJ's failure to consider Dr. Rush's medical findings requires the court to reverse the ALJ's findings and remand this case for further review.

On remand, the ALJ shall determine whether Sapier's condition meets or equals a listed impairment based on all of the

_____

[4]This regulation, promulgated in 1991, negates the First Circuit's prior rule that the ALJ is not required to give greater weight to the opinions of treating physicians.  See Arroyo v. Secretary, 932 F.2d 82, 89 (1st Cir. 1991) (applying old rule).

evidence before him, including the medical evidence from Dr. Rush.  In determining the weight to which the opinions of Dr. Rush and plaintiff's other treating physicians are entitled, the ALJ shall detail the reasons for his determination as provided in 20 C.F.R. § 404.1527.

### b.  Section 1.09

Plaintiff next asserts that his combination of impairments meets or equals the musculoskeletal impairment listed at 20 C.F.R. Pt. 404, Subpt. P, App. 1, Sect. 1.09 (1994), and that the Secretary's finding that his impairments do not meet or equal this listing is not supported by substantial evidence.

The musculoskeletal impairment listed in section 1.09 is the

> *[a]mputation or anatomical deformity of (i.e., loss of major function due to degenerative changes associated with vascular or neurological deficits, traumatic loss of muscle mass or tendons and X-ray evidence of bony ankylosis at an unfavorable angle, joint subluxation or instability):*
> A.  Both hands; or
> B.  Both feet; or
> C.  One hand and one foot.

20 C.F.R. Pt. 404, Subpt. P., App. 1, Sect. 1.09.  The relevant regulations further provide that

> *[l]oss of function* may be due to amputation or deformity.  Pain may be an important factor in causing functional loss, but it

13

> must be associated with relevant abnormal signs or laboratory findings. Evaluations of musculoskeletal impairments should be supported where applicable by detailed descriptions of the joints, including ranges of motion, condition of the musculature, sensory or reflex changes, circulatory deficits, and X-ray abnormalities.

20 C.F.R. Pt. 404, Subpt. P, App. 1, Sect. 1.00A.

The ALJ did not make any specific findings as to why plaintiff's impairment does not meet or equal the impairment listed in section 1.09, but he did make a general finding that plaintiff's impairment or combination of impairments does not meet or equal any listed impairment.

The court finds, for the same reasons set forth in section 2.a. of this order, that it is unable to determine whether this finding is supported by substantial evidence due to the ALJ's failure to consider all of the medical opinions he received. Because the medical opinions of plaintiff's treating physicians contain evidence which could support a finding that plaintiff's impairment meets or equals the impairment listed in section 1.09, the ALJ's failure to consider and weigh such opinions in accordance with 20 C.F.R. § 404.1527 requires the court to reverse the Secretary's findings and remand this case for further review.

On remand, the ALJ shall evaluate all of the medical opinions presented to him. If the ALJ determines that any of the

14

medical opinions of plaintiff's treating physicians are not entitled to controlling weight, his explanation for such determinations shall meet the requirements of 20 C.F.R. § 404.1527(d).

In remanding this particular case to the ALJ for further review, the court notes that the requirements of 20 C.F.R. § 404.1527 serve the dual purpose of ensuring (1) that the ALJ carefully considers all of the medical evidence before him and (2) that the ALJ's reasons for attributing more or less weight to certain medical opinions are well-documented, thereby permitting the ALJ's findings to be properly reviewed under the substantial evidence standard. This dual purpose is consistent with the general rule that "[t]he Secretary has an obligation both to claimants and to reviewing courts to make full and detailed findings in support of his ultimate conclusion." Small v. Califano, 565 F.2d 797, 801 (1st Cir. 1977) (citing, inter alia, 42 U.S.C. § 405(b)).[5]

_____

[5]Having found it necessary to reverse the Secretary's disability determination based on the Secretary's findings at Step 3 of the five-step sequential analysis, the court does not reach the question of whether the Secretary's findings at Steps 4 and 5 of the sequential analysis are supported by substantial evidence.

## 3. Reopening of Earlier Application

At the October 23, 1993, hearing, the ALJ agreed to reopen plaintiff's earlier application for disability benefits, noting that he could do so "for any reason within 12 months . . . ." Tr. 121. See also 20 C.F.R. § 404.988(a) (1994) (a decision or determination "may be reopened . . . [w]ithin 12 months of the date of the notice of the initial determination, for any reason . . . ."). Because the initial determination on plaintiff's second application for disability benefits was the only initial determination made within 12 months of plaintiff's third application for disability benefits, the court presumes that the ALJ intended to reopen plaintiff's second application, but not his first.[6]

To clarify this issue, if the Secretary determines on remand that plaintiff is disabled, the Secretary shall specify which prior application has been reopened.

## Conclusion

As set forth herein, the Secretary's disability determination is reversed and this case is remanded for a

---

[6]The notice of initial determination on plaintiff's first application for disability benefits is dated September 23, 1991. The notice of initial determination on his second application is dated April 27, 1992. Plaintiff's third application was filed on January 25, 1993.

16

redetermination of plaintiff's eligibility for disability insurance benefits in accordance with the provisions of this order. Plaintiff's motion for an order reversing the decision of the Secretary (document 7) is accordingly granted, and defendant's motion for an order affirming the decision of the Secretary (document 9) is denied.

SO ORDERED.

_____
Shane Devine, Senior Judge
United States District Court

May 11, 1995
cc:  Quentin J. Blaine, Esq.
     David L. Broderick, Esq.11