**Robert GIANCOLA, Plaintiff,**

v.

**Donna SHALALA, Secretary, Department of Health and Human Services, Defendant.**

Civ. A. No. 94–40083–NMG.

United States District Court, D. Massachusetts.

Jan. 29, 1996.

David R. Patterson, Shrewsbury, MA, for plaintiff.

Charlene A. Stawicki, Boston, MA, for defendant.

## MEMORANDUM OF DECISION

GORTON, District Judge.

Pending before this Court is a review of the final decision of the Secretary of Health and Human Services ("the Secretary"), denying the appellant, Robert Giancola ("Giancola"), Social Security disability insurance benefits and supplemental security income ("SSI") benefits, under the Social Security Act ("the Act"), as amended, 42 U.S.C. §§ 405(g) and 1383(c)(3).

On March 30, 1992, Giancola filed an application for disability insurance benefits, alleging an inability to work since May 14, 1987, due primarily to a back injury suffered at work, but also due to wrist and ankle pain, hearing loss, and depression.[1] Giancola's application was denied initially and again upon reconsideration by the Social Security Administration. Giancola then filed a timely request for a hearing before the ALJ, as well as an application for SSI benefits.

Giancola and his counsel appeared before an ALJ at a hearing held in Worcester, Massachusetts on June 29, 1993. Considering the matter *de novo*, the ALJ concluded, on September 24, 1993, that Giancola was not under a disability within the meaning of the Social Security Act and thus was entitled to neither disability benefits (pursuant to 42 U.S.C. §§ 416(i) or 423) nor SSI benefits (pursuant to 42 U.S.C. § 1382c(a)(3)(A)). On January 25, 1994, the Appeals Council denied Giancola's request for review of the ALJ's decision, thereby rendering the determination of the ALJ the final decision of the Secretary and thus subject to judicial review. *See Da Rosa v. Secretary of Health & Human Services*, 803 F.2d 24, 25 (1st Cir.1986).

Giancola seeks review of the Secretary's final decision, pursuant to 42 U.S.C. § 405(g), which provides, *inter alia*, that "[the Court] shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing." Giancola contends that the ALJ's findings are not supported by substantial evidence on the record because the ALJ 1) failed to consider the record as a whole, and 2) relied on vocational expert testimony that failed to consider all of the claimant's impairments.[2] For the reasons stated herein, the decision of the Secretary will be affirmed.

## I. BACKGROUND

On May 14, 1987, appellant injured his back while lifting a heavy object during the course of his employment as a grocery store manager. Initially, Giancola was treated by Dr. Neal Fallis, who observed that plaintiff experienced pain in his right thoraco-lumbar region, although he did not experience any radiating pain. Dr. Fallis also noted that Giancola exhibited a decreased range of motion, but no muscle spasms or any evidence of neurological deficits. Dr. Fallis concluded that Giancola had experienced a muscle strain of the mid-back and was "disabled for any sort of heavy physical exertion," but "never at any time disabled for sedentary forms of employment." The doctor prescribed a conservative course of treatment, which included physical therapy, however Giancola failed to follow through with the therapy.

Following treatment with Dr. Fallis, Giancola was treated by Dr. Lahey. Dr. Lahey diagnosed Giancola's back problem as a muscle strain and prescribed rest and physical therapy.

In a letter dated August 26, 1987, physical therapist Joanne Malerba reported that Giancola was not benefitting from the physical therapy program and recommended that it be discontinued. She also reported that Giancola was overweight, with poor postural awareness, forward head and shoulders, and increased lumbar sway.

---

1. Plaintiff filed an earlier application for disability benefits on July 13, 1988, alleging the same onset date and disability due to a back injury and pain. That application was denied on November 30, 1988. Because the claimant did not appeal the denial, the period through November 30, 1988 is rendered *res judicata*. The Administrative Law Judge ("ALJ") expressly declined to reopen the prior application. Absent a colorable constitutional claim, the Court does not have jurisdiction to review an express denial to reopen an application. *Colon v. Secretary of Health & Human Services*, 877 F.2d 148 (1st Cir.1989); *Califano v. Sanders*, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977). However, the ALJ is enti-

tled to consider evidence from a prior denial for the limited purpose of obtaining the cumulative medical history necessary to determine whether the claimant was disabled at the time of his second application. *Frustaglia v. Secretary of Health & Human Services*, 829 F.2d 192, 193 (1st Cir.1987).

2. For purposes of this opinion, the Court relies upon the administrative record, appellant's memorandum in support of his motion to remand the decision of the Secretary, and the Secretary's memorandum in support of its motion for order affirming the decision of the Secretary.

In October, 1987, Dr. Lahey's office notes indicated that Giancola exhibited slight spasm in the thoraco-lumbar region, but had a full range of motion. The notes also indicated that sensory and strength examinations were normal. Dr. Lahey diagnosed Giancola with a chronic thoracic strain and believed that Giancola could not lift over 20 pounds, bend, squat, stoop, or stand for prolonged periods of time. Dr. Lahey continued to monitor appellant, examining him every six months.

In March, 1988, Giancola was involved in a motor vehicle accident. As a result of the accident, in which he was not wearing a seat belt, Giancola experienced pain in his neck, lower back, and ankle. X-rays showed no fractures or dislocations, however, and Giancola was treated conservatively. The medical record contains no record of any follow-up visits until July, 1988, when, apparently in connection with his first application for benefits, Giancola sought treatment from Dr. Lahey for neck, back, and ankle pain. During that same month, Giancola also sought treatment from Dr. Mario Moretti, complaining of the same ailments. While both doctors found a limitation of motion in the patient's lumbar spine, neither found any neurological deficits. Both doctors prescribed a conservative course of treatment, consisting of rest and analgesic medications.

Later that same year, Giancola had an EMG test and CT scan performed. The EMG testing revealed no electrophysiological evidence of bilateral lumbosacral radiculopathy and no evidence of active denervation in the paraspinal muscles or muscles of the legs. The CT scan of the lumbar spine revealed normal intervertebral discs and bony structures.

Giancola's complaints remained essentially unchanged during visits to Drs. Lahey and Moretti in 1989. Although Giancola suffered a limitation of motion, he continued to show no neurological deficits or muscle spasm. Dr. Lahey diagnosed a chronic thoracic lumbar strain and recommended a work-hardening program which Giancola refused.

In June, 1990, A CT scan revealed a slight bulging of the disc in the lumbosacral spine at the L3–4 and L4–5 levels. Giancola's complaints at that time were of pain in the right thoracic spine, which was aggravated by exertion. Magnetic Resonance Imaging ("MRI") in July, 1990 revealed a small to medium-sized central and largely right-sided herniation of the thoracic spine at T7–8. Dr. Lahey did not recommend surgery as a result of the tests. He stated that there was no change in the claimant's disability status.

The medical record contains no evidence of any treatment for the claimant's back condition in 1991. In 1992, however, Giancola continued to complain to Drs. Lahey and Moretti of back pain, which was exacerbated by increased activity. Drs. Lahey and Moretti continued to find limitation of motion but no neurological deficits. At that time, both doctors continued their conservative treatment, including nonsteroidal, anti-inflammatory analgesics, heat, and rest.

Giancola underwent another consultive examination by Dr. Roland Caron in October, 1992. The examination revealed some tenderness in the paraspinous muscles and degenerative disc disease at three levels of the lower back, but also found no sensory deficits and no evidence of severe arthritis or anything else which would cause Giancola disabling or crippling pain. Dr. Caron diagnosed a chronic lumbosacral sprain and opined that Giancola was not disabled and could perform sedentary work.

The medical records contain a work assessment completed by Dr. Moretti in April, 1993. The assessment reports that Giancola suffers from a dull pain in his back which is aggravated by activity. Dr. Moretti advised that the claimant could not lift and carry anything in excess of 10 to 15 pounds, and could not sit, stand, or walk for longer than two hours without changing positions. He further advised that Giancola would need to avoid repetitive overhead reaching, crawling, twisting, frequent bending and stooping, working in cold environments, and working out of doors. Despite this assessment which seemed to contemplate subsequent employment, Dr. Moretti concluded that the claimant was "totally incapacitated for any gainful employment." Dr. Lahey's July, 1993 evaluation disagreed with that assessment, howev-

er, and found that Giancola was only disabled from jobs that "require[ ] him to lift greater than 20 pounds, bend, stoop, squat, or stand for prolonged periods of time."

In addition to his back pain, the claimant has also alleged that he suffers from depression. Dr. David Curran concluded that Giancola suffers from depression that appears to be an adjustment reaction, which slightly limits his daily activities. On the other hand, he found no evidence of anti-social behavior or concentration difficulties.

## II. ANALYSIS

### A. *Standard of Review*

 Review of a final decision of the Secretary is limited under 42 U.S.C. § 405(g). Factual findings by the Secretary must be affirmed if they are supported by substantial evidence in the record and are in accordance with the law. *Id.; Irlanda Ortiz v. Secretary of Health & Human Services,* 955 F.2d 765, 769 (1st Cir.1991). This Court "must uphold the Secretary's findings ... if a reasonable mind, reviewing the evidence in the record as a whole could accept it as adequate to support [his] conclusion." *Irlanda Ortiz,* 955 F.2d at 769 (quoting *Rodriguez v. Secretary of Health & Human Services,* 647 F.2d 218, 222 (1st Cir.1981)); *see also Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971).

 Even if the record could be perceived to support other conclusions, the final decision of the Secretary must be upheld if supported by substantial evidence. *Rodriguez Pagan v. Secretary of Health & Human Services,* 819 F.2d 1, 3 (1st Cir.1987), *cert. denied,* 484 U.S. 1012, 108 S.Ct. 713, 98 L.Ed.2d 663 (1988). It is the responsibility of the Secretary, not the reviewing court, to determine issues of credibility, draw inferences from the record and resolve conflicts in the evidence. *Irlanda Ortiz,* 955 F.2d at 769; *Evangelista v. Secretary of Health & Human Services,* 826 F.2d 136, 141 (1st Cir. 1987). Finally, the findings of the Secretary are conclusive if supported by substantial evidence and should be upheld even in those cases in which the reviewing court, had it heard the same evidence *de novo,* might have

found otherwise. *Lizotte v. Secretary of Health & Human Services,* 654 F.2d 127, 128 (1st Cir.1981); *Reyes Robles v. Finch,* 409 F.2d 84, 86 (1st Cir.1969).

### B. *Legal Analysis*

#### 1. *Disability Determination*

 To establish an entitlement to disability benefits, the burden is on the claimant to prove that he is disabled within the meaning of the Act. *Bowen v. Yuckert,* 482 U.S. 137, 146–47 & n. 5, 107 S.Ct. 2287, 2293–94 & n. 5, 96 L.Ed.2d 119; *see also Deblois v. Secretary of Health & Human Services,* 686 F.2d 76, 79 (1st Cir.1982). Under the Act, a person suffers from a disability when he is unable to engage in any substantial gainful activity due to a medically determinable condition likely to result in death or to continue for at least twelve (12) months. 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A), and 1382c(a)(3)(A). Numerous provisions of the Act emphasize the requirement that medical evidence confirm the existence of the alleged disability. *See, e.g.,* 42 U.S.C. §§ 416(i)(1), 423(d)(1), (3), (5), and 1382c(a)(3)(A).

Furthermore, a claimant is not guaranteed disability benefits merely because he suffers from a medically verifiable impairment. Not only must the claimant be unable to perform his past work, but, given his age, education and work experience, he must be unable to "engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *see also Bowen,* 482 U.S. at 142, 107 S.Ct. at 2291; *McDonald v. Secretary of Health & Human Services,* 795 F.2d 1118, 1120 (1st Cir.1986); 20 C.F.R. §§ 404.1520(f), 416.920(f).

In assessing allegations of disability, the ALJ must follow the five-step sequential evaluation process outlined in the regulations at 20 C.F.R. § 404.1520 and 416.920. In following this process, the ALJ must determine whether:

1) the claimant has met the earnings requirement of the Social Security Act as of the alleged onset date, and continues to meet them through the hearing date, as well as whether claimant has en-

gaged in any substantial gainful activity after the alleged onset date,

2) the claimant has met his burden of demonstrating a medically determinable combination of impairments which significantly interfere with the ability to perform basic work activities,

3) the claimant's impairments are of the degree of severity acknowledged in the Social Security Regulations ("the Listings") to be deemed presumptively disabling, 20 C.F.R. Part 404, Subpart P, Appendix 1,

4) the claimant could still perform his past relevant work activities, and

5) the Secretary has carried its burden of proving that a significant number of jobs exist in the national economy that the claimant could perform, given his impairments, residual functional capacity, age, education, and past work experience.

*Id.* In addition to this analysis, the ALJ must give consideration to the claimant's allegations of pain in light of the criteria set forth at 20 C.F.R. §§ 404.1529 and 416.929 and in *Avery v. Secretary of Health & Human Services,* 797 F.2d 19 (1st Cir.1986).

█ In the case at bar, the evidence reveals that Giancola met the special earnings requirement of the Act, and there is no indication that he has engaged in substantial gainful activity at any time since the alleged onset of disability. Giancola has claimed an inability to perform basic work activities due to a back injury and a depressive disorder. The objective medical evidence establishes that the claimant does suffer from a malady of the lower back, as well as an affective depressive disorder.

There is also substantial evidence in the record, however, that supports the ALJ's conclusion that Giancola's conditions, singly or in combination, do not constitute a "disability" pursuant to 20 C.F.R., Part 404, Subpart P, Appendix 1, § 12.04. For example, neurological findings do not indicate muscle weakness, reflex changes or sensory deficits, as required by 20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.05C. In addition, the claimant's depressive disorder, while somewhat limiting of his social functioning, does not markedly restrict his daily activities or cause deficiencies of concentration, as required by 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.04.

### 2. *Residual Functional Capacity*

█ Having found no disability in the severity of the impairment based upon medical evidence alone, the ALJ proceeded to the next step of the analysis and evaluated the requirements of Giancola's past work in terms of the claimant's residual functional capacity ("RFC"). The Secretary is entitled to rely on the claimant's testimony and on the testimony of a vocational expert ("VE") as an indication of the requirements of claimants' past work. *Gonzalez Garcia v. Secretary of Health & Human Services,* 835 F.2d 1, 3 (1st Cir.1987). Plaintiff indicated that his past work involved standing and walking for long periods of time, as well as lifting objects weighing more than 50 pounds. The VE testified that Giancola's past work as a produce manager would correspond to medium-skilled work, and his past work as an assistant store manager to light-skilled work. The VE also testified that the skills necessary for those jobs were not transferable to other kinds of work.

█ The ALJ found that Giancola has the RFC "to perform the requirements of work except for lifting over 15 pounds occasionally and 10 pounds frequently, standing, walking and sitting for longer than 2 hours at a time without a position change, repetitive overhead reaching, crawling, twisting, frequent bending and stooping, work in damp and cold environments, and work out of doors." The ALJ also found that Giancola's depressive disorder would preclude him from handling more than low-stress jobs, without complex instructions and where he would not be required to have sustained contact with the public.

█ The foregoing RFC finding is supported by substantial evidence in the record. In assessing Giancola's RFC, the ALJ considered the medical data and opinions in the record as well as the plaintiff's testimony. In making an RFC assessment, the ALJ is

entitled to rely on medical evaluations which are not raw, uninterpreted medical data, and to "piece together the relevant medical facts from the findings and opinions of multiple physicians." *Evangelista*, 826 F.2d at 144.

Considering the record as a whole, only Dr. Moretti, of the several doctors who examined Giancola, diagnosed him as disabled from any gainful employment. However, the work assessment of Giancola in April, 1993, which was performed by Dr. Moretti, Giancola's treating physician, was consistent with an RFC for sedentary-to-light work, with limitations on his activities and working environment. That assessment is consistent with the assessment given by Dr. Lahey after examining the claimant in July, 1993. In addition, consultive non-examining physicians prepared RFC assessments in June and November, 1992, based on the medical records to date, and concluded that Giancola was able to perform the full range of light work, with some limitations on his activities and work environment. Such evaluations may constitute substantial evidence, particularly when supported by other evidence in the record. *See Berrios Lopez v. Secretary of Health & Human Services*, 951 F.2d 427, 431 (1st Cir. 1991); *Gordils v. Secretary of Health & Human Services*, 921 F.2d 327, 329 (1st Cir. 1990).

### 3. *Subjective Complaints of Pain*

■ With respect to plaintiff's complaints of pain and the severity of his symptoms, the ALJ dutifully considered the record in light of *Avery v. Secretary of Health & Human Services*, 797 F.2d 19 (1st Cir.1986). In *Avery*, the First Circuit Court of Appeals enumerated the following factors that should be considered in determining whether alleged pain constitutes an additional limitation upon a claimant's ability to perform a substantial gainful activity:

1) the nature, location, onset, duration, frequency, radiation, and intensity of any pain,

2) precipitating and aggravating factors (e.g., movement, activity, environmental conditions),

3) type, dosage, effectiveness, and adverse side-effects of any pain medication,

4) treatment, other than medication, for pain relief,

5) functional restrictions, and

6) the claimant's daily activities.

*Id.* at 29.

The ALJ appropriately considered Giancola's subjective assertions of disabling pain and substantial evidence in the record supports the ALJ's *Avery* findings adverse to the claimant.

First, claimant's pain is described as a dull, aching pain. There is no evidence of persistent severe pain, i.e., atrophy, severe limitation of motion, loss of appetite, or sensory loss. Giancola does have increased pain with activities that put stress on the thoracic and lumbar spine, but the RFC specifically limits those activities.

■ Second, Giancola's treatment program was limited. He was treated conservatively and failed to complete a physical therapy program or to participate in a work-hardening program that was recommended by one of his treating physicians. In addition, Giancola went for long periods of time without receiving any treatment for his allegedly disabling level of pain. The ALJ is entitled to regard substantial gaps in the medical record as an indication of the lack of credibility of the allegations of unrelenting pain. *Perez v. Secretary of Health & Human Services*, 958 F.2d 445, 446–47 (1st Cir. 1991); *Irlanda Ortiz v. Secretary of Health & Human Services*, 955 F.2d 765, 766 (1st Cir.1991).

Finally, Giancola acknowledged being able to watch television for several hours without losing concentration from the pain. He is also able to care for his own needs and frequently goes out for meals.

■ Perhaps most importantly, multiple complaints of pain, by themselves, cannot render Giancola disabled under the Act. "A claimant's statement as to [his] pain shall not alone be conclusive evidence of a disability." *Avery*, 797 F.2d at 20. Rather, there must be:

medical signs and findings, established by medically acceptable clinical or laboratory

646

diagnostic techniques, which show the existence of a medical impairment ... which could reasonably be expected to produce the pain or other symptoms alleged.... 42 U.S.C. § 423(d)(5)(A). A claimant establishes a disability based on allegations of pain only if the medical findings, when considered with all the evidence, including statements by the individual or his physician as to the intensity of or persistence of such pain (which may reasonably be accepted as consistent with the medical signs and findings) lead to a conclusion that the individual is under a disability. *See id.* Substantial evidence in the record supports the ALJ's determination that the foregoing standard has not been met by the claimant.

### 4. *Application of the Grid and VE Testimony*

 There is substantial evidence in the record to support the ALJ's conclusion that Giancola could no longer perform his past relevant work activities, based upon the evidence that his past work required at least light to medium exertional levels. Having so found, the burden shifted to the Secretary to prove that a significant number of jobs exist in the national economy that claimant could perform, consistent with his impairments, RFC, age, education, and relevant work experience. The Medical–Vocational Guidelines ("the Grid") of 20 C.F.R. Part 404, Subpart P, Appendix 2, are designed to "enable the Secretary to satisfy this burden in a streamlined fashion without resorting to the live testimony of vocational experts." *Ortiz v. Secretary of Health & Human Services,* 890 F.2d 520, 524 (1st Cir.1989) (quoting *Sherwin v. Secretary of Health & Human Services,* 685 F.2d 1, 3 (1st Cir.1982), *cert. denied,* 461 U.S. 958, 103 S.Ct. 2432, 77 L.Ed.2d 1318 (1983)). However, where the claimant is not able to perform the full range of jobs within a category, the Secretary must carry its burden by relying on the testimony of a vocational expert, although the Grid may be used as a framework. *Id.* at 524 (quoting *Gagnon v. Secretary of Health & Human Services,* 666 F.2d 662, 665 (1st Cir.1981)). Given the fact that Giancola could not perform the full range of sedentary to light work, the finding of "disabled" called for by the Grid could only be used as a framework in the ALJ's decision.

 In the instant case, the ALJ properly considered the testimony of a vocational expert. The VE testified that, given appellant's vocational factors and RFC limitations, there were jobs that the claimant could perform, such as security guard monitor, small parts assemblyman, quality control inspector and production solderer. Moreover, the VE testified as to the significant number of those jobs both in Massachusetts and in the country as a whole. Using Rule 202.21 as a framework for decisionmaking, in conjunction with the vocational testimony, there is substantial evidence in the record for the ALJ to have found that Giancola retained the ability to perform a significant number of jobs in the national economy, and thus was not disabled within the meaning of the Social Security Act.

For the foregoing reasons, the Secretary's decision to deny disability benefits to Giancola is, therefore, AFFIRMED.

SO ORDERED.