Lord v. SSA                    CV-97-505-B    06/14/98

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


**Richard Lord**


    **v.**                                           C-97-505-B


**Kenneth S. Apfel, Commissioner
of the Social Security
Administration**


## MEMORANDUM AND ORDER

Richard Lord suffers from a degenerative disc disease affecting his lower back.  Lord first applied for Title II Social Security Disability Income ("SSDI") benefits on July 18, 1991, alleging that he was unable to work because of his back condition and the resulting pain his condition causes.  The Social Security Administration ("SSA") denied Lord's application at the initial level of review, and Lord did not appeal that denial.  Lord again applied for SSDI benefits on April 26, 1994.  The SSA denied this application at each stage of administrative review, rendering a final decision denying the application on January 31, 1997.

Lord brings this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C.A. § 405(g) (West Supp. 1998),

seeking review of the SSA's final decision to deny him SSDI benefits. He asserts that the SSA Administrative Law Judge ("ALJ") who reviewed his case erred in two respects, namely that: (1) the ALJ erroneously found that Lord had the residual functional capacity to perform the full range of light and sedentary work; and (2) the ALJ failed to take into account certain non-exertional limitations on his ability to work and, therefore, improperly relied upon the Medical-Vocational Guidelines, 20 C.F.R. Pt. 404, Subpt. P, App. 2 (1997), in finding him not disabled.

For the reasons that follow, I grant Lord's motion in part and remand the case to the SSA for further review.


## I. FACTS[1]

### A. Lord's Health Problems

Lord was born on July 26, 1947 and was 47 years old when the ALJ rendered his decision finding him not disabled. He has an eighth-grade education with no additional educational or vocational training. He previously worked in housing maintenance both at an apartment complex and, most recently, at a mobile home park. His duties included caring for buildings and grounds,

---

[1] Unless noted otherwise, the following facts are taken from the Joint Statement of Material Facts submitted by the parties to this action.

plowing snow, shoveling, ditch-digging, and repairing broken equipment.  Lord has not worked since August 16, 1990.

On August 16, 1990, Lord twisted his back while descending backwards off of a ladder.  Complaining of stiffness in his lower back, Lord visited the emergency room at a local hospital on August 20, 1990.  At that time, plaintiff was prescribed an anti-inflammatory agent and a muscle relaxant, and was referred to an orthopedist.

Pursuant to that referral, Lord was examined by Dr. Jamie Smolen on August 27, 1990.  Lord complained of pain and stiffness in his lower back and stated that the pain increased with bending in all directions.  Plaintiff also complained of a limited range of motion.  At that examination, plaintiff performed prone press-ups and abdominal curls with no problem.  His heel and toe walking, hopping, reflexes, motor examination, and straight leg raising were all normal.

At a follow-up visit on September 17, 1990, Lord continued to complain of pain, but also noted that it had decreased and that his flexibility had increased.  Dr. Smolen started plaintiff

on back-strengthening exercises.  Dr. Smolen subsequently noted that over the next several weeks, Lord's condition improved with exercise and that he experienced less pain.  Despite the progress, Dr. Smolen suggested that plaintiff remain out of work until his condition further improved.

After a December 19, 1990 office visit, Lord continued to complain of lower-back pain and stated that he had difficulty sitting, bending, twisting, and turning.  Testing showed that the strength of Lord's back muscles had decreased since the previous testing.  Examination revealed discomfort with bending, knee to chest flexion, abdominal curl, and prone extension.  Dr. Smolen indicated that plaintiff should not return to work.  A subsequent MRI revealed a large herniated disk at L5-S1 and a bulging disk at L4-L5.  As a result of the MRI, Dr. Smolen referred Lord to Dr. Jonathon Sobel for a surgical consult.

Lord complained to Dr. Sobel of severe pain in his lower back, left buttock, and left leg as well as difficulty moving.  Dr. Sobel found "mild" nerve root tension and "slightly" deep tendon reflexes at the ankle and discussed surgical options with Lord.  A subsequent CT scan confirmed Lord's herniated and bulging disks.  When compared to the previous MRI, the CT scan

4

results showed no significant worsening and even slight improvement.

On May 10, 1991, Lord visited Dr. Anthony Marino for a second opinion on surgery. At that examination, Lord noted pain in the left buttock and occasional numbing of the left foot, but also noted intermittent improvement. Lord also stated that physical therapy provided "some relief." Dr. Marino noted that plaintiff moved about the examination room and stood on one leg, his heels, and his toes, all without difficulty. Dr. Marino concluded that surgery might help to relieve Lord's leg pain.

One June 20, 1991, plaintiff reported to Dr. Sobel that he had been told to "take it easy for the summer" and that he was "doing quite well after a period of rest." Dr. Sobel was of the opinion that Lord should be vocationally retrained. In July 1991, plaintiff entered a work hardening program. Though Lord complained of pain following therapy, Dr. Sobel attributed this pain to Lord's "sedentary" lifestyle. On September 1991, Lord expressed his desire to remain in physical therapy and to return to light duty work. Dr. Sobel noted "[t]hat will be fine."

After an October 10, 1991 examination, Dr. Sobel noted that residual functional capacity testing indicated that Lord could perform medium to heavy work. Unable to square these results with Lord's continued complaints of pain, Dr. Sobel recommended

more objective testing.  On January 13, 1992, Dr. Sobel noted that Lord's flexibility and leg pain had improved and that he required paraspinal muscular strengthening.  Dr. Sobel referred Lord to Dr. Smolen to pursue this program.

Dr. Smolen reported on January 30, 1992, that Lord was no longer having leg pain and that his back was "simply achy, stiff and sore."  Lord reported that he was comfortable leading a sedentary, low activity lifestyle.  Although examination revealed "slightly limited and slightly uncomfortable" back bending, plaintiff performed toe and heel walking, hopping, and abdominal curls all without difficulty.  Dr. Smolen recommended against surgery and that Lord should continue in physical therapy.

Lord next visited Dr. Smolen nearly a year later, on January 21, 1993.  Lord complained of lower-back pain and discomfort performing activities around the house as well as those related to sitting, standing, bending, twisting, and turning. Examination revealed that Lord was able to slowly and cautiously bend toward the floor, reaching below the level of his knees. His back extension was limited and uncomfortable, though straight-leg raising tests, reflexes, motor strength, and sensory examination were all normal.  Dr. Smolen recommended continued physical therapy.

Over the next few months, Lord's condition remained

unchanged and he continued to complain of lower-back pain and stiffness.  On April 8, 1993, Dr. Smolen stated that he believed Lord was unable to return to work.  Dr. Smolen further noted that he expected "that realistically he will not return to work until his [Worker's Compensation] case is settled."  Additionally, Dr. Smolen noted that Lord "will remain partially and permanently disabled.  He will never be able to perform a job that requires repetitive twisting, turning, lifting, carrying, or bending. . . .  He will always be at a light duty work capacity, if he ever works again."  Dr. Smolen then referred Lord to Dr. John Thomas for more physical therapy.

During a May 4, 1993 physiatric[2] consultation with Dr. Thomas, Lord complained of lower-back pain radiating down into the buttocks and left thigh with intermittent numbness in his left toes.  Although plaintiff described a "full-blown, classic, chronic pain lifestyle," he was taking no medications.  Physical

---

[2]  The specialization in physical or rehabilitation medicine.

examination revealed limited trunk rotation, lateral bending, and extension. Lord was able to balance without difficulty, and his gait was unremarkable. Dr. Thomas diagnosed two-level disc disease without radiculopathy. Dr. Thomas discussed with Lord the possibility of settling his Worker's Compensation case and using the proceeds to fund membership in a heath center and engage in an independent exercise program. Subsequent testing revealed a twenty-two percent impairment of the whole person.

On March 21, 1994, Lord was examined by Dr. Vincent Giustolisi. Lord complained of pain in his lower back that radiated into both buttocks and legs. He stated that the pain increased with activity and varied with the weather. Lord further stated that he was taking no medication for the pain. Dr. Giustolisi noted that although Lord appeared uncomfortable during the examination, he "ambulate[d] into the office without any difficulty" and dismounted the examination table "without any undue discomfort." Examination of the back revealed decreased forward flexion and lateral bending with normal extension and rotation of the trunk. Lord was able to heel-and-toe walk without difficulty. Dr. Giustolisi concluded that Lord could perform light-duty work that did not involve prolonged standing,

stooping, squatting, or lifting more than 25 pounds.  He rated Lord as having a thirteen percent impairment of the whole body.

On April 11, 1994, Lord's attorney referred him to Dr. Andrew Rudins for examination.  Lord described an "ache" in his lower back and a "slight ache" in the left buttock that would occasionally become a deep pain following physical therapy.  Dr. Rudins noted that Lord experienced shortness of breath on exertion, which Lord attributed to "heavy cigarette smoking."  Lord indicated that with the exception of weekly trips to the grocery store and the bank, he generally stayed at home and watched television.  Although he stated that he could not mow the lawn or shovel snow, Lord stated that he would do light housekeeping chores such as cleaning-up and washing dishes.

On physical examination, Dr. Rudins noted Lord to be sitting "comfortably in no obvious distress."  His gait, including heel-and-toe walking, was normal.  Forward flexion of the trunk was limited, while extension was not.  Rotation and lateral extension of the trunk were nearly full with no obvious discomfort.  Dr. Rudins found that Lord's prior whole person impairment rating of twenty-two percent was reasonable.  Additionally, Dr. Rudins determined that Lord could perform work "at a light duty

9

capacity" and recommended that Lord participate in a home exercise program, gradually increasing his physical activity level. Noting that Lord's pain would likely persist for the foreseeable future, Dr. Rudins recommended that Lord enter a pain-management program.

In a June 29, 1994 notation, Dr. Rudins noted that Lord was limited to "sedentary activities only due to pain." He noted that plaintiff would require frequent rest breaks and again recommended enrollment in a pain-management program.

B. **Administrative Review of Lord's Applications**

Lord first applied for SSDI benefits on July 19, 1991, and was denied at the initial level of review. He did not appeal that determination. Lord again applied for SSDI benefits on April 26, 1994. This application was denied both at the initial level of review and upon reconsideration.

Following these denials, Lord brought his case before an ALJ. The ALJ who reviewed the case found that there was no good reason to reopen Lord's 1991 application for benefits and limited his review to Lord's 1994 application. He found that Lord suffered from a severe impairment in the form of degenerative disc disease but that the impairment did not meet or equal a

10

listed condition for the purposes of finding him disabled.  In addition, the ALJ found that based on the medical evidence, Lord had the capacity to perform a full range of light and sedentary work activities.  The ALJ further found that Lord's pain was not so severe or disabling as to have a significant impact on his performance of a full range of light work activities.  Because Lord's prior work fell within the medium work activity range, the ALJ concluded that Lord was unable to perform his past work. Applying the Medical-Vocational Guidelines, however, the ALJ found that there were numerous jobs in the national economy that plaintiff was capable of performing.  Therefore, the ALJ found plaintiff not disabled.

## II.  <u>STANDARD OF REVIEW</u>

After a final determination by the Commissioner denying a claimant's application for benefits and upon a timely request by the claimant, this court is authorized to: (1) review the pleadings submitted by the parties and the transcript of the administrative record; and (2) enter a judgment affirming, modifying, or reversing the Commissioner's decision.  <u>See</u> 42 U.S.C.A. § 405(g).  The court's review is limited in scope,

11

however, as the Commissioner's factual findings are conclusive if they are supported by substantial evidence. See Irlanda Ortiz v. Secretary of Health and Human Servs., 955 F.2d 765, 769 (1st Cir. 1991); 42 U.S.C.A. § 405(g). The Commissioner is responsible for settling credibility issues, drawing inferences from the record evidence, and resolving conflicting evidence. See Irlanda Ortiz, 955 F.2d at 769. Therefore, the court must "'uphold the [Commissioner's] findings . . . if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [the Commissioner's] conclusion.'" Id. (quoting Rodriguez v. Secretary of Health and Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)).

If the Commissioner has misapplied the law or has failed to provide a fair hearing, however, deference to the Commissioner's decision is not appropriate, and remand for further development of the record may be necessary. See Carroll v. Secretary of Health and Human Servs., 705 F.2d 638, 644 (2d Cir. 1983); see also Slessinger v. Secretary of Health and Human Servs., 835 F.2d 937, 939 (1st Cir. 1987) ("The [Commissioner's] conclusions of law are reviewable by this court.") I apply these standards in reviewing the issues plaintiff raises on appeal.

## III. DISCUSSION

12

As a preliminary matter, Lord contends that the ALJ, while nominally declining to reopen his 1991 application, constructively reopened it by rendering a decision on the merits of that application. Consequently, Lord argues this court has jurisdiction to review the denial of that application. See, e.g., Wolfe v. Chater, 86 F.3d 1072, 1078 (11th Cir. 1996); Morin v. Secretary of Health and Human Servs., 835 F. Supp. 1414, 1422 (D.N.H. 1992). A review of the ALJ's hearing decision, however, reveals that he based his denial of the 1994 application primarily on evidence arising subsequent to the 1991 application. To the extent that the ALJ discussed evidence relevant to Lord's 1991 application, it was as background information in support of his ultimate denial of the 1994 application. Thus, I find that the ALJ did not constructively reopen the 1991 application. See Frustaglia v. Secretary of Health and Human Servs., 829 F.2d 192, 193 (1st Cir. 1987) ("[An] ALJ is entitled to consider evidence from a prior denial for the limited purpose of reviewing the preliminary facts or cumulative medical history necessary to determine whether the claimant was disabled at the time of his second application."); Giancola v. Shalala, 913 F. Supp. 638, 641 n.1 (D. Mass. 1996).

In determining whether a claimant is disabled, an ALJ must

13

use a five-step sequential analysis.[3]  See 20 C.F.R. § 404.1520
(1997).  At step four, the ALJ determines whether the claimant's
impairment prevents him from performing his past relevant work.
Id. § 404.1520(e); Dudley v. Secretary of Health and Human
Servs., 816 F.2d 792, 793 (1st Cir. 1987).  Such a determination
requires that the ALJ make: (1) an assessment of the claimant's
residual functional capacity ("RFC") -- i.e., what the claimant
can still do despite his impairment; and (2) an assessment of the
requirements of the claimant's past relevant occupations.  See
Santiago v. Secretary of Health and Human Servs., 944 F.2d 1, 5
(1st Cir. 1991).  If the ALJ finds that the claimant's RFC would
prevent him from performing the demands of his past relevant
work, the ALJ then proceeds to the fifth step of the sequential
analysis and determines whether there is other work in the
national economy that the claimant can perform.  20 C.F.R. §

---

[3]  The ALJ is required to consider the following five steps
when determining if a claimant is disabled:
  (1) whether the claimant is engaged in substantial
  gainful employment;
  (2) whether the claimant has a severe impairment that
  has lasted for twelve months or had a severe impairment
  for a period of twelve months in the past;
  (3) whether the impairment meets or equals a listed
  impairment;
  (4) whether the impairment prevents or prevented the
  claimant from performing past relevant work;
  (5) whether the impairment prevents or prevented the
  claimant from doing any other work.
See 20 C.F.R. §§ 404.1509, 404.1520.

404.1520(f); <u>Bowen v. Yuckert</u>, 482 U.S. 137, 141 (1987); <u>Ortiz v. Secretary of Health and Human Servs.</u>, 890 F.2d 520, 524 (1st Cir. 1989). Thus, at both the fourth and fifth steps of the sequential analysis, the ALJ must assess the claimant's RFC: at step four to determine whether the claimant can do his past relevant work, and at step five to determine whether the claimant can do other work, taking into consideration his age, experience, and education. <u>See</u> <u>Social Security Ruling</u> ("SSR") 96-8p.

In the instant case, the ALJ determined at step four that plaintiff had an RFC to perform a full array of light and sedentary work activity. Finding that plaintiff's past relevant work required medium- to heavy-duty work activity, the ALJ concluded that plaintiff's impairment precluded him from performing his past relevant work. At step five, the ALJ applied the Medical-Vocational Guidelines and concluded that because there are a substantial number of "light duty" jobs in the national economy that plaintiff is capable of performing, plaintiff is not disabled.

Plaintiff challenges the ALJ's decision on two bases. First, plaintiff contends that the ALJ erred in assessing his RFC as light duty. He contends that this conclusion: (a) is against the weight of the medical evidence; and (b) ignores the effects of the pain that his impairment causes him. Second, plaintiff

15

contends that in using the Medical-Vocational Guidelines, the ALJ failed to take into account his non-exertional limitations. I address each contention in turn.

A. **The ALJ's Assessment of Plaintiff's RFC**

In assessing a claimant's RFC, the ALJ reviews the medical evidence regarding the claimant's physical limitations as well as the claimant's own description of his physical limitations. See Manso-Pizarro v. Secretary of Health and Human Servs., 76 F.3d 15, 17 (1st Cir. 1996). Where the claimant has shown he suffers from an impairment that could reasonably be expected to produce the pain alleged, the ALJ must take into consideration the claimant's subjective evaluation of his pain and of the limitations that his pain may impose on his ability to work. See Avery v. Secretary of Health and Human Servs., 797 F.2d 19, 21 (1st Cir. 1986). However, the ALJ is not required to give credit to the claimant's subjective evaluations of pain if they are inconsistent with the medical findings that exist regarding his condition. See Dupuis v. Secretary of Health and Human Servs., 869 F.2d 622, 623 (1st Cir. 1989). Rather, after making specific

findings[4] detailing the inconsistencies between the claimant's

---

[4] In determining the credibility of the claimant's allegations regarding pain, the ALJ considers such factors as: (1) the nature, location, onset, duration, frequency, radiation,

16

allegations of pain and the objective medical findings, the ALJ may discount the allegations in determining the claimant's RFC. See id.

    1.  Medical Evidence Regarding Plaintiff's RFC

The medical evidence and opinions contained in the record provide substantial support for the ALJ's finding the Lord has the RFC to perform a full range of light and sedentary work activities.[5] See Gordils v. Secretary of Health and Human Servs., 921 F.2d 327, 329 (1st Cir. 1990) (ALJ can render common-sense judgments about a claimant's RFC based on review of medical findings). First, the physician who reviewed Lord's file on behalf of the state agency found Lord to have an RFC to perform light work. See Berrios Lopez v. Secretary of Health and Human Servs., 951 F.2d 427, 431 (1st Cir. 1991) (ALJ may rely on non-

_____

and intensity of the pain; (2) the precipitating and aggravating factors; (3) the type, dosage, effectiveness, and adverse side-effects of any pain medications; (4) the non-medication forms of treatment for relief of pain; (5) any functional restrictions; and (6) the claimant's daily activities. See Avery, 797 F.2d at 29.

    [5] Light work involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" frequent "walking or standing;" and frequent "sitting . . . with some pushing and pulling of arm or leg controls." See 20 C.F.R. § 404.1567(b). Further, "[i]f someone can do light work, . . . [he ordinarily] can also do sedentary work." Id.
Sedentary work involves "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools;" occasional "walking and standing;" and frequent "sitting." See 20 C.F.R. § 404.1567(a).

examining physician's opinion as evidence of lack of disability, particularly where such an opinion is supported by other evidence in record). Second, several examining physicians found Lord capable of performing light-duty work. For instance, in June 1991, Dr. Sobel was of the opinion that Lord should be vocationally retrained, and, in October 1991, he noted that it would be "fine" for Lord to return to light-duty work despite the limitations imposed by his impairment. RFC testing conducted by Dr. Sobel in October 1991 indicated that Lord even could perform medium to heavy work, although these results were belied by Lord's complaints of pain. In January 1992, Dr. Sobel noted that Lord's flexibility had improved and recommended a back-strengthening regime. Additionally, Dr. Rudins, a physician recommended by Lords's attorney, found after an April 1994 examination that plaintiff could perform work "at a light duty capacity" and recommended that Lord exercise in an effort to gradually increase his physical activity level.

Plaintiff contends, however, that the ALJ should have accorded controlling weight to the opinion of Dr. Smolen, his primary treating physician, who concluded in April 1993 that plaintiff was unable to work and would be "partially and permanently disabled." See 20 C.F.R. § 404.1527(d)(2) (1997). Although the Social Security regulations do sometimes require the

ALJ to give controlling weight to a treating physician's opinion regarding a claimant's disability, this mandate is not absolute. Rather, the ALJ need only do so where objective medical evidence supports the treating physician's opinion and where the opinion is not inconsistent with other evidence in the record. See id.; SSR 96-2p. Additionally, "a medical source opinion that an individual is 'disabled' or 'unable to work' . . . is an opinion that is reserved for the Commissioner. . . . [T]he adjudicator will not give any special significance to [such an] opinion because of its source." SSR 96-8p n.8; see also Arroyo v. Secretary of Health and Human Servs., 932 F.2d 82, 89 (1st Cir. 1991) (ALJ "not required to accept the conclusions of claimant's treating physicians on the ultimate issue of disability").

The ALJ discounted Dr. Smolen's statement for several valid reasons. First, he found the statement wholly inconsistent with the opinions of Drs. Sobel, Rudins, and Giustolisi that Lord was capable of performing light-duty work. Second, the ALJ found the statements inconsistent with Dr. Smolen's prior assessments of Lord's condition as well as with his subsequent determination that the condition could improve to the point at which he could perform light-duty work activities. Finally, the ALJ noted that Dr. Smolen's statement may have been tainted by the litigation posture of Lord's Workers' Compensation case. Dr. Smolen stated

19

that it was his opinion that Lord would not return to work until the case settled. Thus, I find that the ALJ was justified in discounting Dr. Smolen's opinion that plaintiff was disabled and unable to work as inconsistent with not only other medical source opinions but also with Dr. Smolen's own prior and subsequent assessments. See 20 C.F.R. § 404.1527(d)(2); Arroyo, 932 F.2d at 89; Tremblay v. Secretary of Health and Human Servs., 676 F.2d 11, 13 (1st Cir. 1982).

For similar reasons, the ALJ discounted Dr. Rudin's June 1994 statement that Lord was limited to sedentary activities. The ALJ reasoned that the two-sentence, unsubstantiated report directly contradicted Dr. Rudin's own April 1994 opinion that upon examination plaintiff was capable of performing light-duty work activities. The ALJ noted that there was no evidence in the record to indicate that Lord's condition had changed since the April 1994 assessment, nor was the June 1994 statement supported by reasoning or evidence. Thus, the ALJ permissibly discounted Dr. Rudin's June 1994 statement to the extent that it was inconsistent with the remainder of the medical record.[6] See Arroyo, 932 F.2d at 89; 20 C.F.R. § 404.1527(d)(2).

---

[6] The ALJ also discounted Dr. Giustolisi's report on the basis of Dr. Giustolisi's lack of treatment history with Lord. Dr. Giustolisi's report was equivocal, finding plaintiff capable of light-duty work, though with certain restrictions.

20

2.  Plaintiff's Complaints of Pain.

Lord contends that the pain he suffers as a result of his back condition is so severe that it renders him unable to perform light-duty and sedentary work activities.  He argues that the ALJ improperly discredited the effect of pain on his RFC and, therefore, issued an erroneous decision.  The Commissioner contends that the medical record amply justifies the ALJ's decision that Lord is capable of performing light and sedentary work activities despite the pain his impairment causes.  I agree.

In evaluating Lord's complaints of pain, the ALJ followed the procedure set forth in 20 C.F.R. § 404.1529 (1997).  Pursuant to that procedure, the ALJ first found that Lord suffers from a medically determinable impairment -- degenerative disc disease -- that could reasonably be expected to cause pain.  See 20 C.F.R. § 404.1529(b).  The ALJ then evaluated the extent to which Lord's pain affects his capacity to work by inquiring, with reference to the medical record, into the intensity and persistence of that pain.  See id.  He concluded that Lord's back and leg pain were not so severe as to preclude his performance of light and sedentary work.

The evidence in the medical record amply supports the ALJ's conclusion that Lord's pain does not render him disabled.  MRI testing and other neurological examination revealed the absence

21

of nerve-root damage contributing to the pain. The record further reflects that Lord's leg pain had completely subsided by January 1993 and was not the subject of ongoing treatment. Despite his continued complaints of pain, physical examination consistently revealed that Lord walked with a normal gait, was able to heel-and-toe walk, hop, balance, and perform abdominal crunches and leg raises without undue discomfort. Additionally, several examining physicians observed that Lord was generally able to walk comfortably into examining rooms, mount and dismount examining tables without undue discomfort, and sit through the examination without discomfort.

Other evidence from the administrative record supports the ALJ's decision to discredit Lord's complaints of pain. The ALJ found Lord's lack of ongoing treatment or medication inconsistent with complaints of disabling pain. See Irlanda Ortiz, 955 F.2d at 769 (treatment plan that did not provide for regular monitoring serves as an indication that claimant's back spasm did not cause unrelenting pain); Albors v. Secretary of Health and Human Servs., 817 F.2d 146, 147 (1st Cir. 1986) (use of only aspirin to control pain is evidence that pain is not disabling); Boisvert v. Callahan, 997 F. Supp. 183, 186 (D. Mass. 1998) (similar); SSR 96-7p. Although Lord stated that he did not continue treatment because Dr. Smolen retired and that he did not

take medication because he could not afford it and does not like it, these reasons do not explain why he did not consult another physician or why medication was seldom even prescribed for his condition.

Additionally, the conservative treatment regime prescribed Lord's treating physicians supports the ALJ's decision to discount his allegations of disabling pin. Lord's physicians typically chose to treat his impairment conservatively, recommending continued exercise, physical therapy, and enrollment in a pain-management program, rather than cessation of all activity. See Boisvert, 997 F. Supp. at 186-87 (ALJ properly relied on conservative treatment regime in discounting claimant's allegations of pain); SSR 96-7p (A claimant's allegations of pain "may be less credible if the level or frequency of treatment is inconsistent with the level of complaints."). Indeed, at one point Dr. Smolen attributed Lord's pain to his sedentary lifestyle rather than to his impairment. Another examining physician similarly remarked that the longer Lord remained inactive, the more difficult it would be for him to become functional. Finally, significant gaps of time in between Lord's treatments -- his medical record reveals no treatment from January 1992 to January 1993 and from August 1993 to March 1994 -- are inconsistent with complaints of disabling pain. See

<u>Irlanda Ortiz</u>, 955 F.2d at 769 (significant gaps in treatment history not consistent with allegations of disabling pain).

Lord's own statements as to his own capabilities and activities provide an additional basis on which the ALJ could discount the credibility of Lord's allegations that his pain prevents him from working. The ALJ noted that, albeit with some attendant pain, Lord was able to drive a car, grocery shop, and perform various household chores, such as dishwashing, washing clothes, and cooking.[7] The ability to engage in such activities is inconsistent with allegations of disabling pain. <u>See</u> <u>Barrientos v. Secretary of Health and Human Servs.</u>, 820 F.2d 1, 3 (1st Cir. 1987) (ALJ properly discounted credibility of claimant's allegations of lower-back pain where claimant admitted she could cook, wash dishes, and do laundry); <u>Delsie v. Shalala</u>, 842 F. Supp. 31, 35 (D. Mass. 1994) (ALJ properly discounted credibility of claimant's allegations of back pain where claimant admitted she could perform household chores, shop, and drive).

The RFC assessment performed by the SSA physician at the state level further supports the ALJ's decision to discredit plaintiff's complaints of pain. <u>See</u> <u>Berrios Lopez</u>, 951 F.2d at

---

[7] Although the ALJ did not specifically question Lord about his daily activities at the hearing, the ALJ had ample evidence before him when making his decision, including a four-page daily-activity form completed by Lord in May 1994. Moreover, the ALJ specifically drew from this evidence in support of his decision.

431-32; 20 C.F.R. § 404.1527(f)(2) (requiring ALJ to consider findings of fact made by state-agency physicians); SSR 96-7p. The SSA physician found that the severity of Lord's complaints of pain were "not supported by objective medical evidence" and noted that Lord had consistently refused surgery and seemed non-compliant with respect to recommended exercise programs, diet, and the cessation of smoking. Consequently, the SSA physician concluded that despite his complaints of pain, Lord retained the RFC to perform light-duty work activity. This report supports the ALJ's conclusion that Lord retained the capacity to do light work pursuant to 20 C.F.R. § 404.1567(b), see Gordils, 921 F.2d at 329, and, when considered in conjunction with the other medical evidence of record, further supports the ALJ's decision to discount the credibility of Lord's allegations that his pain prevents him from working. See Berrios Lopez, 951 F.2d at 431-32.

Based on the medical evidence and opinions contained in the record as well as Lord's own assessment of his capabilities, I find that substantial evidence exists supporting the ALJ's determination that Lord has the capacity to perform light work despite his allegations of pain.

B.  **The ALJ's Use of the Medical-Vocational Guidelines**

At step five of the sequential analysis, the burden shifts

to the Commissioner to show that there are a significant number of jobs in the national economy that the claimant can perform. Bowen, 482 U.S. at 140-42; Goodermote v. Secretary of Health and Human Servs., 690 F.2d 5, 6-7 (1st Cir. 1982). "Where a claimant's impairments involve only limitations in meeting the strength requirements of work," the Medical-Vocational Guidelines, (the "Grid"), provide "a 'streamlined' method by which the [Commissioner] can carry this burden." Heggarty v. Sullivan, 947 F.2d 990, 995 (1st Cir. 1991) (quoting Ortiz, 890 F.2d at 524). "Where a claimant has non-exertional impairments in addition to exertional limits," however, the Grid may not accurately reflect the availability of jobs the claimant can perform. Id. at 996. Rather, if a non-exertional limitation "significantly affects [the] claimant's ability to perform substantially the full range of jobs" at a given strength level, the Commissioner may not rely on the Grid to carry his burden and the testimony of a vocational expert is usually required. Id. (quoting Lugo v. Secretary of Health and Human Servs., 794 F.2d 14, 17 (1st Cir. 1986)).

In the instant case, the ALJ found that Lord did not suffer from any non-exertional impairments. Accordingly, the ALJ applied the Grid and found that Lord is not disabled. Lord alleges that the medical record contains substantial evidence of

26

a limited ability to bend at the waist, which constitutes a non-exertional impairment.  See 20 C.F.R. § 404.1569a(c)(1)(vi) 1997); SSR 83-14.  In failing to consider the impact that this limitation has on his ability to perform light-duty work, Lord contends, the ALJ improperly relied upon the Grid in finding that there are a significant number of jobs that he is capable of performing.

The medical record contains no evidence to support the ALJ's conclusory statement that Lord suffers from no non-exertional impairments.  Rather, the medical record is replete with references to Lord's limited ability to bend at the waist. Nearly every physician who examined Lord noted objective findings that Lord suffered from a limited ability to bend or stoop. Depending on its severity, this limitation could well circumscribe the number of jobs within the light-work category that Lord might be able to perform.  See Ortiz, 890 F.2d at 525 ("[A]ny limitation [on the ability to bend from the waist] must be considered very carefully to determine its impact on the size of the occupational base of a person who is otherwise found functionally capable of light work.") (quoting SSR 85-15).

Consequently, the Commissioner's decision must be vacated and remanded.  See Heggarty, 947 F.2d at 996-97 (remand appropriate where ALJ failed to assess the significance of non-

27

exertional limitations); <u>Gagnon v. Secretary of Health and Human Servs.</u>, 666 F.2d 662, 666 (1st Cir. 1981). On remand, the Commissioner should determine whether Lord's limited ability to bend at the waist is significant enough to limit his access to the full range of jobs requiring light-duty strength capabilities. <u>See</u> <u>Gagnon</u>, 666 F.2d at 666. If he finds that it is not, then he may rely on the Grid to determine whether Lord is disabled. <u>See</u> <u>Heggarty</u>, 947 F.2d at 996; <u>Ortiz</u>, 990 F.2d at 524. Conversely, if the Commissioner finds that Lord's limited ability to bend at the waist does significantly impact his ability to perform light work, then reliance on the Grid is improper and consultation with a vocational expert may be required. <u>Id.</u>

## IV. <u>CONCLUSION</u>

For the foregoing reasons, Lord's motion for an order reversing the Commissioner's decision (document no. 5) is granted in part, and the Commissioner's motion for an order affirming his decision (document no. 7) is denied. The case is remanded to the Commissioner for further consideration consistent with this order.

SO ORDERED.

_____
Paul Barbadoro
Chief Judge

28

July 14, 1998
cc:  Jonathan Baird, Esq.
     David Broderick, Esq.